**WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Philip E. Strok, State Bar No. 169296
pstrok@wgllp.com
Reem J. Bello, State Bar No. 198840
rbello@wgllp.com
Kyra E. Andrassy, State Bar No. 207959
kandrassy@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone:   (714) 966-1000
Facsimile:   (714) 966-1002

Attorneys for the Official Committee
of Equity Holders

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:08-bk-13421-ES |
| FREMONT GENERAL CORPORATION, a Nevada corporation, | Chapter 11 Case |
| | **OFFICIAL COMMITTEE OF EQUITY HOLDERS' SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION** |
| Debtor. | |
| Taxpayer ID No. 95-2815260 | |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

343420.2

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................. 1

    A.    Purpose of This Document ................................................ 1

    B.    Deadlines for Objecting; Date of Plan Confirmation Hearing ..................... 2

           1.    Time and Place of the Confirmation Hearing ................................. 3

           2.    Deadline for Objecting to the Confirmation of the Plan ................... 3

           3.    Identity of Person to Contact for Further Information Regarding the Plan ......................................................... 3

    C.    Disclaimer ................................................................ 3

II. OVERVIEW OF THE EQUITY COMMITTEE'S PLAN ............................................ 5

III. HISTORY OF THE DEBTOR ................................................................ 11

    A.    The Banking Operations ............................................... 12

    B.    The Insurance and Indemnity Operations ................................. 13

    C.    The Debtor's Management ............................................... 14

           1.    Richard A. Sanchez, Interim President and Interim Chief Executive Officer ............................................... 15

           2.    Thea Stuedli, Executive Vice President and Chief Financial Officer ...................................................... 16

           3.    Donald E. Royer, Executive Vice President and General Counsel ............................................................. 16

    D.    Selected Financial Information ........................................ 16

IV. THE CHAPTER 11 CASE .................................................................. 17

    A.    Events Leading to the Bankruptcy Filing ............................... 17

    B.    Significant Events During the Chapter 11 Case .......................... 19

           1.    Retention of Debtor's Professionals and Agents ......................... 19

           2.    Appointment of the Creditors' Committee and Equity Committee ............................................................ 19

           3.    Consummation of the CapitalSource Transaction ........................ 20

           4.    The Order Limiting Transfers of Equity ................................. 20

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| | | |
|---|---|---|
| 5. | Insider Compensation | 21 |
| 6. | Establishment of General Bar Date and Filing of Claims | 21 |
| 7. | Relief from Stay Motions – McIntyre, Faigin, and The Bank of New York Mellon | 22 |
| 8. | Engagement of KPMG Corporate Finance and the Attempts to Negotiate a Consensual Plan | 23 |
| 9. | Exclusivity | 23 |
| 10. | Settlement of Claims and Litigation | 24 |
| | a. California Insurance Commissioner | 24 |
| | b. Massachusetts Attorney General | 26 |
| | c. Enron | 28 |
| | d. The Rampino Litigation and Associated Defendants' Wage, SERP, and Indemnification Claims | 29 |
| | e. Other Settled and Resolved Claims | 31 |
| 11. | Allowance of Fees and Costs of Professionals Employed by the Debtor, the Creditors' Committee, and the Equity Committee | 32 |

V. LITIGATION AND CAUSES OF ACTION ........................................................... 34

A. Litigation Commenced Pre-Petition .......................................................... 34

B. Post-Petition and Other Potential Causes of Action.................................. 34

1. In General 34

2. Adv. Pro. No. 8:08-ap-01256-ES and Adv. Pro No. 8:09-ap-01103-ES ........................................... 34

3. Adv. Pro. No. 8:08-ap-01258-ES .................................................. 35

4. Adv. Pro. No. 8:08-ap-01418-ES .................................................. 35

5. Adv. Pro. No. 8:08-ap-01470-ES .................................................. 35

6. ERISA Class Action .................................................................. 36

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

7.  The Securities Class Action (Al-Beitawi v. Fremont General Corp., Consolidated Securities Complaint, Case No. CV07-05756) ........................................ 36

8.  Other Actions ................................................ 37

9.  Other Significant Litigation Claims ..................... 37

10. Causes of Action Are to Be Retained Under Plan; No Waiver Should Be Implied .............................. 37

11. Objections To Claims ..................................... 38

12. Insurance Policies with Westchester Surplus Lines Insurance Company and Pacific Employers Insurance Company ..................................................... 38

VI.  GENERAL DISCUSSION OF ASSETS AND LIABILITIES ................................. 39

A.  Assets .......................................................... 39

B.  Liabilities ...................................................... 40

1.  Liabilities Identified in the Schedules ............... 40

2.  Proofs of Claim .......................................... 40

3.  Senior and Junior Notes ............................... 41

4.  Intercompany Claims ................................... 42

VII. SUMMARY OF THE PLAN OF REORGANIZATION ................................. 42

A.  Allowance and Treatment of Unclassified Claims ........... 43

1.  Administrative Claims .................................. 43

a.  Administrative Claim Reserve ................... 44

b.  Administrative Claims Bar Date ................. 44

c.  Deadline for Objections to Administrative Claims ............... 44

d.  U.S. Trustee Fees ................................ 44

e.  Professional Fee Claims ......................... 45

2.  Priority Tax Claims ..................................... 45

B.  Allowance and Treatment of Classified Claims and Interests ............... 46

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

1.    Secured Claims (Class 1) ................................................................ 46

2.    Priority Non-Tax Claims (Class 2)................................................... 46

3.    General Unsecured Claims (Class 3)............................................. 47

4.    Class of Equity Interests (Class 4) ................................................ 48

5.    Class of Claims Subordinated Under 11 U.S.C. § 510(b) (Class 5).......................................................................................... 48

C.    Executory Contracts and Unexpired Leases............................................. 49

D.    Means of Effectuating the Plan ................................................................ 50

1.    Merger.......................................................................................... 50

      a.    The Assets and Liabilities of FGCC.................................... 52

      b.    The Assets and Liabilities of FRC ...................................... 52

2.    Postconfirmation Business Operations of the Reorganized Debtor ...................................................................... 54

3.    The Reorganized Debtor's Management Team ............................ 55

4.    The Short-Term Strategy ............................................................. 56

5.    The Long-Term Strategy .............................................................. 57

      a.    Community Bank................................................................. 57

      b.    Distressed Loans ............................................................... 58

      c.    Hard Money Mortgages...................................................... 58

      d.    Asset-Based Financing....................................................... 58

E.    Risk Factors............................................................................................. 58

1.    Plan Assumptions ........................................................................ 58

2.    Additional Risks ........................................................................... 60

      a.    General Risks..................................................................... 60

      b.    Specific Risks..................................................................... 60

            (i)    Repurchase Obligations ............................................ 60

            (ii)   Risks Regarding Unresolved Litigation...................... 61

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

# <u>TABLE OF CONTENTS (cont.)</u>

<u>Page</u>

   (iii)  Risks Regarding Unresolved Claims ........................ 61

F.  Tax Consequences of Plan....................................................... 63

G.  Retention of Jurisdiction ........................................................... 64

H.  Claims....................................................................................... 65

I.  The Committees ....................................................................... 66

VIII. MISCELLANEOUS PROVISIONS GOVERNING DISBURSEMENTS ................ 66

A.  Dates of Distributions............................................................... 66

B.  Manner of Distribution.............................................................. 66

C.  Undeliverable Distributions ...................................................... 67

D.  Rounding of Payments ............................................................. 67

E.  Compliance with Tax Requirements ......................................... 67

F.  Distribution of Unclaimed Property ........................................... 68

G.  No De Minimis Distributions ..................................................... 68

H.  Setoff ....................................................................................... 68

I.  Exculpation Provision .............................................................. 69

IX. CONFIRMATION REQUIREMENTS AND PROCEDURES ............................... 69

A.  Who May Vote or Object........................................................... 70

  1.  Who May Object to Confirmation of the Plan ................. 70

  2.  Who May Vote to Accept/Reject the Plan ...................... 70

    a.  What Is an Allowed Claim/Interest....................... 70

    b.  What Is an Impaired Claim/Interest ..................... 71

  3.  Who Is Not Entitled to Vote ............................................ 71

  4.  Votes Necessary to Confirm the Plan ............................ 72

  5.  Votes Necessary for a Class to Accept the Plan............ 72

  6.  Treatment of Non-accepting Classes ............................. 72

B.  Liquidation Analysis ................................................................. 72

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

<u>Page</u>

C.     Feasibility .................................................................................. 75

X.   EFFECT OF CONFIRMATION OF PLAN ........................................... 77

A.     Discharge .................................................................................. 77

B.     Vesting of Property of the Estate ............................................. 79

C.     Modification of Plan ................................................................. 79

D.     Post-Confirmation Status Report ............................................. 79

E.     Post-Confirmation United States Trustee Fees ....................... 79

F.     Post-Confirmation Conversion/Dismissal ................................ 79

G.     Final Decree .............................................................................. 80

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

# I.   INTRODUCTION

The Official Committee of Equity Holders (the "Equity Committee") of Fremont General Corporation (the "Debtor") submits this Second Amended Disclosure Statement (the "Disclosure Statement") in connection with the solicitation of acceptances and rejections of the Equity Committee's second amended plan of reorganization (the "Plan"), a copy of which was sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

This is a reorganizing plan.  In other words, the Equity Committee seeks to accomplish payments under the Plan with Cash on hand and other Assets presently available to the Debtor, as well as assets to be generated by the Reorganized Debtor.

**ANY AND ALL STATEMENTS, REPRESENTATIONS, ESTIMATES, ANALYSES, AND FINANCIAL PROJECTIONS CONTAINED IN THE DISCLOSURE STATEMENT AND PLAN ARE SOLELY THOSE OF THE EQUITY COMMITTEE, AND SHOULD NOT BE RELIED UPON AS STATEMENTS OF THE DEBTOR OR ITS MANAGEMENT TEAM. WHILE CERTAIN FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT AND PLAN RELATING TO THE DEBTOR AND ITS WHOLLY-OWNED INDIRECT SUBSIDIARY FREMONT REORGANIZING CORPORATION ("FRC") MAY BE BASED UPON INFORMATION PROVIDED BY THE DEBTOR TO THE EQUITY COMMITTEE, SUCH INFORMATION WAS PROVIDED PURSUANT TO A CONFIDENTIALITY AGREEMENT EXPRESSLY CONTEMPLATING THAT SUCH MATERIALS WERE NOT GENERALLY AVAILABLE FOR PUBLIC CIRCULATION AND WERE CONSTRUCTED UNDER CIRCUMSTANCES THAT HAVE NOW BEEN MATERIALLY ALTERED. MOREOVER, THE INFORMATION INCLUDES FINANCIAL STATEMENTS THAT HAVE NOT BEEN AUDITED OR REVIEWED BY INDEPENDENT REGISTERED ACCOUNTANTS, HAVE NOT BEEN PRESENTED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES, AND WERE PREPARED FOR INTERNAL PURPOSES RATHER THAN FOR THE PURPOSES PRESENTED IN THE DISCLOSURE STATEMENT AND PLAN.**

## A.   Purpose of This Document

The purpose of this Disclosure Statement is to set forth information (1) about the history of the Debtor, its business, and the chapter 11 case, (2) concerning the Plan and alternatives to the Plan, (3) advising the Holders of Claims and Equity Interests of their

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

rights under the Plan, (4) assisting any Creditors and Equity Interest Holders in making an informed judgment regarding whether they should indicate their preference for this Plan and vote to reject any plan proposed by the Debtor or the Official Committee of Unsecured Creditors, and (5) assisting the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed. This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

By order dated _____, the Bankruptcy Court approved this Disclosure Statement as containing "adequate information" concerning the Plan, meaning that it contains sufficient information to enable any Creditors and Equity Interest Holders entitled to vote to make an informed judgment in exercising their rights to vote to accept or reject the Plan. Any party may now solicit votes or preferences for or against the Plan and for or against the plan proposed by the Creditors Committee.

The only Creditors or Equity Interest Holders who may vote for or against the Plan are those who have a Claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class. A Class is impaired if the legal, equitable, or contractual rights of the Claims or Equity Interests in the Class are altered. Classes of Claims or Equity Interests that are not impaired are conclusively presumed to have voted to accept the Plan and therefore are not entitled to vote on the Plan. No Classes of Claims or Equity Interests are impaired under the Plan, so all Classes are deemed to have voted to accept the Plan.

**B.  Deadlines for Objecting; Date of Plan Confirmation Hearing**

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. In other words, the terms of the Plan are not yet binding on anyone.

Weiland, Golden,
Smiley, Wang, Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

However, if the Court later confirms the Plan, then the Plan will be binding on the Debtor and on all Creditors and Equity Interest Holders in this case.  The Equity Committee, as proponent of the Plan, recommends that the Holders of Claims in Classes 1, 2, 3A, 3B, 3C, 4, and 5 indicate on the ballot their preference for the Plan and reject any plan proposed by the Debtor or the Creditors Committee.

### 1.  Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2009, at __:__ ___.m. in Courtroom 5A of the Ronald Reagan Federal Building and United States Courthouse located at 411 West Fourth Street, Santa Ana, California 92701.

### 2.  Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be Filed with the Court and served upon counsel for the Equity Committee no later than _____.

### 3.  Identity of Person to Contact for Further Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Philip E. Strok of Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP, by phone at (714) 966-1000 or by e-mail at pstrok@wgllp.com.

### C.  Disclaimer

The Disclosure Statement contains information that will inform your decision of whether to vote to accept or reject the Plan.  The purpose of the Disclosure Statement is to provide "adequate information" of a kind and in sufficient detail as far as is reasonably practicable given the nature and history of the Debtor and the condition of its books and records that would enable a reasonable hypothetical investor to make an informed judgment about the Plan.  The Equity Committee makes no representations concerning the Debtor, its financial condition, or any aspect of the Plan other than those contained in this Disclosure Statement.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

3

The financial data relied upon in formulating the Plan is based on historical financial information obtained by the Equity Committee from the Debtor and on financial projections prepared by the Equity Committee's financial advisors, CRG Partners Group LLC ("CRG"). Unless otherwise indicated, the financial information is unaudited. The Equity Committee cannot warrant or represent that the information contained in this Disclosure Statement is without inaccuracies, although great effort has been taken to ensure that the information is presented fairly.

In July 2008, Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP ("Weiland Golden") commenced representing the Equity Committee as its counsel and CRG commenced representing the Equity Committee as its financial advisors. Weiland Golden and CRG have relied upon information provided by the Debtor and its management in connection with the preparation of this Disclosure Statement. Although Weiland Golden and CRG have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified all of the information contained herein. The Equity Committee incorporates by reference the boldface capitalized text set forth above on page 1 of this Disclosure Statement.

Although a copy of this Disclosure Statement is being served on the Securities and Exchange Commission (the "SEC") and the SEC has been given an opportunity to object to the adequacy of the Disclosure Statement, the Disclosure Statement has not been and will not be registered under the Securities Act of 1933, as amended (the "Securities Act"), or applicable state securities laws. Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of the Disclosure Statement, its exhibits, or the statements contained therein.

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Any tax advice that may be contained in the Disclosure Statement is not intended to be used and cannot be used for the purpose of avoiding any tax penalties that may be imposed on any person. All Creditors and Equity Interest

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  Holders should consult their own legal counsel and accountants as to legal, tax, and other

2  matters concerning their Claims or Equity Interests.

3

4  ## II.  OVERVIEW OF THE EQUITY COMMITTEE'S PLAN

5          The following is a brief summary of the material provisions of the Plan and is

6  provided for convenience only.  A more detailed description of the Plan appears below in

7  Section VII of the Disclosure Statement.

8          The Plan's objective is to simplify the corporate structure of the Debtor and its

9  wholly-owned subsidiary, Fremont General Credit Corporation ("FGCC"), and FGCC's

10  wholly-owned subsidiary, Fremont Reorganizing Corporation, formerly known as Fremont

11  Investment & Loan ("FRC") by effecting a merger of these three entities and vesting title to

12  all Assets of the Debtor, FGCC, and FRC in the Reorganized Debtor which will then make

13  Distributions to Holders of Allowed Claims and Equity Interests in accordance with the

14  Plan and after making appropriate reserves for creditors of FGCC and FRC.  The Plan

15  designates a series of Classes of Claims and one Class of Equity Interests and includes

16  all Claims against and Equity Interests in the Debtor.  **AS A RESULT OF THE MERGER,**

17  **CLAIMS AGAINST FGCC AND FRC WILL BE ASSUMED AND SATISFIED BY THE**

18  **REORGANIZED DEBTOR AND FGCC AND FRC WILL CEASE TO EXIST AS**

19  **SEPARATE LEGAL ENTITIES.  CLAIMS AGAINST FGCC AND FRC ARE NOT**

20  **CLASSIFIED AND TREATED AS CLAIMS UNDER THE PLAN AND WILL INSTEAD BE**

21  **PAID IN THE ORDINARY COURSE OF THE REORGANIZED DEBTOR'S BUSINESS**

22  **AS REQUIRED BY APPLICABLE NON-BANKRUPTCY LAW.**

23          The following table summarizes the treatment of Claims and Equity Interests under

24  the Plan with:  (1) estimates of the amount of Claims in each category or Class that will be

25  finally determined to be Allowed Claims; and (2) a description of the treatment provided

26  for in the Plan for each Class of Claims and Equity Interests.  The dollar amounts are

27  based on the records of the Debtor as of the Petition Date or the date of the Disclosure

28  Statement proposed by the Debtor and do not constitute an admission by the Equity

Smiley, Welland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Committee or the Debtor as to the validity or amount of any particular Claim or Equity

Interest.  All rights of any party in interest to dispute the validity or amount of any Claim or

Equity Interest that have not already been Allowed by the Bankruptcy Court or by

agreement of the parties are hereby reserved.

| Class | Description of Claim or Interest | Treatment | Estimated Aggregate Amount of Allowed Claims | Estimated Percentage Recovery of Allowed Claims or Interests | Impaired and Entitled to Vote |
|---|---|---|---|---|---|
| N/A | Administrative Claims[1] | Unless any entity entitled to payment of an Allowed Administrative Claim agrees to a less favorable treatment or unless otherwise ordered by the Court, each Holder of an Allowed Administrative Claim will receive, in full satisfaction of its Claim, Cash in an amount equal to the amount of the Allowed Administrative Claim on the later of: (1) the Effective Date, or (2) the fifteenth Business Day after such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable.  However, Ordinary Course Administrative Claims will be paid in full in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary Course Administrative Claim or as otherwise authorized by the Court. | The Equity Committee estimates that the projected range of unpaid Administrative Claims will be from $2,000,000 to $2,500,000. | 100% | No |
| N/A | Priority taxes | Except to the extent that a Holder of an Allowed Priority Tax Claim has | The Debtor has estimated from range | 100% | No |

---

[1]  The Administrative Claims described in this table do not include Administrative Claims that have already been paid or any intercompany Administrative Claims that may be due to FRC.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

| Class | Description of Claim or Interest | Treatment | Estimated Aggregate Amount of Allowed Claims | Estimated Percentage Recovery of Allowed Claims or Interests | Impaired and Entitled to Vote |
|---|---|---|---|---|---|
| | | been paid by the Debtor prior to the Effective Date or agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the later of (1) the Effective Date, or (2) the fifteenth Business Day after the Priority Tax Claim becomes an Allowed Priority Tax Claim, or in either case, as soon thereafter as is practicable. | $100,271 to $102,676,574.[2] The Equity Committee has estimated that the Allowed Priority Taxes will be significantly below the high-end of the range. | | |
| 1 | Secured Claims | In full satisfaction of any Allowed Secured Claim, the Holder of the Allowed Secured Claim will receive either the full amount of the Allowed Secured Claim in Cash on the later of the Effective Date or fifteen days after the Claim becomes an Allowed Secured Claim or the Collateral securing the Allowed Secured Claim. Any Allowed deficiency balance will be treated in Class 3A. | Neither the Debtor nor the Equity Committee are aware of any valid Secured Claims. | 100% | No |
| 2 | Priority Non-Tax Claims | Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Allowed Priority Non-Tax Claim will | The Debtor has estimated the range from $0 to $68,253 | 100% | No |

(...Continued)

[2]    The $102,676,574 figure includes the IRS's proof of claim in the amount of $89,384,470 and the California Franchise Tax Board's proof of claim in the amount of $13,292,104 and does not represent the Debtor's view of the amount that ultimately is likely to be Allowed.  The Debtor disputes the proofs of claim filed by the IRS and the California Franchise Tax Board.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| Class | Description of Claim or Interest | Treatment | Estimated Aggregate Amount of Allowed Claims | Estimated Percentage Recovery of Allowed Claims or Interests | Impaired and Entitled to Vote |
|---|---|---|---|---|---|
| | | be paid in full satisfaction of the Priority Non-Tax Claim on the later of (1) the Effective Date or (2) the fifteenth Business Day after such date that the Claim becomes an Allowed Priority Non-Tax Claim, or in either case, as soon thereafter as is practicable | | | |
| 3A | General Unsecured Claims (excluding the TOPrS Claims (Class 3B) and the $176,402,107 of Claims represented by the 7.875% Senior Notes due 2009 (Class 3C)) | Except as provided below with respect to the Holder of an Allowed General Unsecured Claim pursuant to the Rampino Stipulation, the Enron Stipulation, the BONY Stipulation or any other settlement, compromise, stipulation or order which provides for treatment that is more or less favorable than the treatment provided for herein, whether in terms of maturity, amortization, interest rate and/or entitlement to interest (prepetition or postpetition) or otherwise, the Holder of an Allowed Class 3A General Unsecured Claim shall retain their legal, equitable, and contractual rights and be paid in full on the later of the Effective Date of the Plan or within fifteen business days of becoming an Allowed Class 3A General Unsecured Claim. with prepetition interest and postpetition interest (with postpetition interest to be calculated at the federal judgment rate in effect on the Petition Date of | Approximately $56.5 million Class 3A includes the proof of claim filed by the Debtor's indirect wholly-owned subsidiary, FRC, in an unspecified amount. | 100% | No |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weilland, Golden,
Smiley, Wang, Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

| Class | Description of Claim or Interest | Treatment | Estimated Aggregate Amount of Allowed Claims | Estimated Percentage Recovery of Allowed Claims or Interests | Impaired and Entitled to Vote |
|---|---|---|---|---|---|
| | | 2.51%). The Holder of an Allowed General Unsecured Claim pursuant to the Rampino Stipulation, the Enron Stipulation, the BONY Stipulation or any other settlement, compromise, stipulation or order which provides for treatment that is more or less favorable than the treatment provided for herein, whether in terms of maturity, amortization, interest rate and/or entitlement to interest (prepetition or postpetition) or otherwise, shall be paid in accordance with the underlying compromise, settlement, stipulation or order giving rise to the Allowed Claim, and if no payment date is specified on the later of (1) the fifteenth Business Day after the Effective Date or (2) the fifteenth Business Day after the Claim becomes an Allowed Claim, or in either case, as soon thereafter as is practicable. | | | |
| 3B | TOPrS Claims | The Holders of Allowed TOPrS Claims shall retain their legal, equitable, and contractual rights provided by the Indenture dated as of March 6, 1996. However, if the Court finds at the Confirmation Hearing that the Holders of the Class 3B Claims have demonstrated that a contractual provision or applicable non-bankruptcy | $107,422,681 | 100% | No |

| Class | Description of Claim or Interest | Treatment | Estimated Aggregate Amount of Allowed Claims | Estimated Percentage Recovery of Allowed Claims or Interests | Impaired and Entitled to Vote |
|---|---|---|---|---|---|
| | | law entitles the Holders of TOPrS Claims to demand or receive accelerated payment of their Claims, the Reorganized Debtor will: (1) cure any such default that occurred prepetition, other than a default of a kind specified in 11 U.S.C. § 365(b)(2) or of a kind that § 365(b)(2) does not require to be cured; (2) reinstate the maturity of the Class 3B Claim as such maturity existed prior to the default; (3) compensate the Holders of such Class 3B Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (4) if such Class 3B Claim arises from any failure to perform a nonmonetary obligation, compensate the Holder of such Class 3B Claim (other than the Debtor or an insider) for the actual pecuniary loss that it suffered as a result of such failure. | | | |
| 3C | General Unsecured Claims of the Holders of the 7.875% Senior Notes | The Holders of the Senior Notes shall retain their legal, equitable, and contractual rights and, on the Effective Date, will be paid their principal, prepetition interest at the rate set forth in the Senior Notes, and postpetition interest at the federal judgment rate in effect as of the Petition Date, which was 2.51%. | $176,402,107, plus accrued interest | 100% | No |
| 4 | Equity Interests | Holders of existing Equity Interests in the Debtor will | As of the Petition Date, | 100% | No |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| Class | Description of Claim or Interest | Treatment | Estimated Aggregate Amount of Allowed Claims | Estimated Percentage Recovery of Allowed Claims or Interests | Impaired and Entitled to Vote |
|---|---|---|---|---|---|
| | | retain their Equity Interests in the Reorganized Debtor in full and final satisfaction of their Equity Interests. | approximately 82,116,176 shares of the Debtor's common stock had been issued | | |
| 5 | Section 510(b) Claims | The Holders of Allowed Section 510(b) Claims will retain their legal, equitable, and contractual rights and, pursuant to Section 510(b), will receive newly-issued interests in the Reorganized Debtor in full and final satisfaction of their Allowed Section 510(b) Claims. The percentage interest of common stock to which such Holders will be entitled shall be based upon the average trading value of the common stock of the shares of the Reorganized Debtor for the thirty days preceding the date on which any Section 510(b) Claims become Allowed Section 510(b) Claims if such allowance occurs after the Effective Date. | Unknown | 100% | No |

## III.    HISTORY OF THE DEBTOR

The Debtor is a publicly-held Nevada corporation that has functioned as a financial services holding company. Its prepetition business operations were conducted through two intermediate holding companies--one for banking operations and one for insurance operations. Prepetition, the Debtor's common stock was traded on the New York Stock Exchange under the symbol "FMT."

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

11

## A.    The Banking Operations

The Debtor engaged in both commercial and residential real estate lending nationwide through FRC, the Debtor's industrial bank subsidiary.  FRC focused on the origination of commercial real estate loans and held these loans primarily for investment. Its consumer lending operations focused on the origination of non-prime and sub-prime residential real estate loans, most of which were sold to third party investors or securitized.  FRC was one of the nation's largest originators of sub-prime loans. Prepetition, FRC offered certificates of deposit and savings and money market deposit accounts through its 22 retail banking branches in California.

FRC's business grew rapidly in the years before the Debtor's bankruptcy filing. FRC's total amount of residential loan originations increased from approximately $14 billion in 2003 to approximately $36 billion in 2006.  Its commercial real estate loan originations also increased from approximately $1.1 billion in annual mortgage originations in 2003 to approximately $8.3 billion in 2005.  However, the sub-prime lending market deteriorated significantly in 2007.  A periodic review by the Federal Deposit Insurance Corporation ("FDIC") of FRC's sub-prime lending operations led to the issuance of a cease-and-desist order with respect to some of FRC's past sub-prime lending practices. The cease and desist order required much higher capital levels, making it more difficult for FRC to operate in the sub-prime business.  As a result, FRC decided to discontinue its sub-prime lending activities.  As of March 7, 2007, FRC ceased entering into new funding commitments for sub-prime mortgage loans, although it continued to honor remaining outstanding commitments.  FRC also sold substantially all of its commercial real estate loan portfolio to another entity during 2007, terminating FRC's interest in its commercial real estate lending business.

The vast majority of FRC's originated residential loans were transferred to third parties via a whole loan sale or securitizations.  Most of FRC's loans transferred were transferred via a whole loan sale.  In a whole loan sale, FRC entered into an agreement to sell loans for cash, generally on a servicing released basis, but occasionally on a servicing

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000    Fax 714-966-1002

retained basis. As part of the sale process, FRC gave customary representations and warranties regarding the characteristics and origination process of the loans. FRC also generally committed to repurchase loans if a payment default occurred within a certain period after the loan was sold.

In a securitization, FRC transferred residential loans to a qualifying special-purpose entity, established for the limited purpose of purchasing the loans and issuing interest bearing securities that represented interests in the loans. The transfer of the loans in a securitization was treated as a sale, with the loans being removed from FRC's balance sheet, although FRC continued to perform loan servicing functions for the securitizations.

For various reasons, some of the loans that FRC originated were not sold to other parties. In March and April of 2007, FRC entered into whole loan sale agreements that transferred the majority of FRC's unsold sub-prime residential real estate loans, valued at approximately $6.9 billion.

**B.     The Insurance and Indemnity Operations**

On the insurance side, the Debtor owns all of the common stock of Fremont Compensation Insurance Group, Inc. ("FCIG"). FCIG in turn owns 100% of bare legal title to the common stock of Fremont Indemnity Company in Liquidation ("Indemnity") and 100% of bare legal title to the common stock of Fremont Life Insurance Company ("Life"). Indemnity operated in the property and casualty insurance industry and engaged in the underwriting of workers' compensation insurance policies. In June 2003, Indemnity was placed into a state "conservation" proceeding under section 1101 of the California Insurance Code, and the following month, that proceeding was subsequently converted into a liquidation proceeding under section 1016 of the California Insurance Code. In connection with those proceedings, the California Insurance Commissioner obtained all of the powers of the directors, officers, and manager of Indemnity, as well as sole control over Indemnity's property.

Life operated as a licensed life, annuity, and accident, and health insurance company, although it had discontinued writing new policies in 1995 and in 1996 entered

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   into a coinsurance agreement to reinsure all existing annuity, life, and credit in-force

2   business. By 2004, Life had terminated its life, disability, workers' compensation and

3   common carrier liability lines. Life was placed into a state "conservation" proceeding by

4   the CIC in June 2008.

5       C.      **The Debtor's Management**

6           Until November 2007, the Debtor was managed by a management team that

7   included Chairman of the Board James A. McIntyre, President and Chief Executive Officer

8   Louis J. Rampino. Mr. McIntyre and Mr. Rampino were each employed by the Debtor for

9   more than thirty years. Mr. McIntyre served as the Debtor's Chief Executive Officer from

10  1976 until 2004, when Mr. Rampino was appointed as Chief Executive Officer.

11          In November 2007, Mr. McIntyre, Mr. Rampino, and several of the Debtor's other

12  officers and directors resigned after the Debtor continued to experience significant

13  financial difficulties. The Debtor's previous management team was replaced with a new

14  management team, including Chairman of the Board of Directors and Chief Executive

15  Officer Stephen H. Gordon and Vice-Chairman and President David S. DePillo. This

16  management team managed the Debtor from November 2007 through October 2008.

17  Gordon and DePillo resigned from day-to-day management on September 30, 2008, but

18  remained on the board as chairman and vice-chairman, respectively. On October 1,

19  2008, Richard A. Sanchez replaced Mr. DePillo and Mr. Gordon and became the Debtor's

20  Interim President and Interim Chief Executive Officer. Mr. Sanchez has served as Interim

21  President and Interim CEO through the present date. Other members of the new

22  management team, namely Thea K. Stuedli as the chief financial officer and Donald E.

23  Royer as the general counsel, have remained in their positions since November 2007.

24          In November 2007, in connection with the hiring of the new management team, the

25  Debtor and FRC entered into employment agreements (together, the "Employment

26  Agreement") with Gordon, DePillo, Sanchez, Royer, and Stuedli (together, the

27  "Executives") for a term of three years. Notices of non-renewal of the Employment

28  Agreement are expected to be sent in November 2009. Among other things, the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Employment Agreements provide that the Debtor and FRC are jointly and severally obligated to pay the Executives' salaries. In addition, if an Executive is terminated for other than "cause" of a voluntary resignation for "good reason," then the Debtor and FRC may be obligated to pay them severance compensation equal to 300% of their average annual bonus and provide continued health benefits for three years. Moreover, if there is a "change in control event," which includes situations where any person becomes the beneficial owner of 20% of the voting securities of the Debtor or FRC or a reorganization or merger where the resulting entity is not the Debtor or FRC, then any outstanding and unvested equity awards the Executive is eligible to receive automatically fully vest.

The Employment Agreements with Sanchez, Royer, and Stuedli (the "Executive Employment Agreements") will be assumed under the Plan and they will continue to retain their executive positions and perform their existing job descriptions with the Reorganized Debtor following the Effective Date, should they decide to continue to serve. As of the date of this Disclosure Statement, they have not made a decision about whether to continue to serve. In addition, the Debtor has advised the Equity Committee that Sanchez, Royer, or Stuedli may take the position that "good reason" exists for one or more of them to resign under the terms of the Executive Employment Agreements and that they are entitled to certain payments by the Debtor as a result of their resignation. The Equity Committee does not agree with that contention. In the event that they elect to continue to serve, their biographical information follows.

      **1.     Richard A. Sanchez, Interim President and Interim Chief Executive Officer**

Mr. Sanchez has served as both a bank executive and a banking regulator. From 2002 through 2006, he was a director of Commercial Capital Bancorp, Inc. ("CCBI") and served as the Executive Vice President, Chief Administrative Officer, and Corporate Secretary for CCBI and Commercial Capital Bank ("CCB"). Prior to that, he was Deputy Regional Director for the Office of Thrift Supervision, where he supervised examiners responsible for 85 insured financial institutions with total assets of over $300 billion.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**2.    Thea Stuedli, Executive Vice President and Chief Financial Officer**

Ms. Stuedli is a certified public accountant with more than eleven years of financial services experience.  From 2004 to 2006, Ms. Stuedli served as Senior Vice President and Chief Accounting Officer at CCB, where she was primarily responsible for all internal and external financial reporting requirements, including all SEC filings, board of directors' reports, and regulatory reports.  From 2002 through 2004, she served as the Corporate Controller at Jackson Federal Bank and, before that, served as a manager in the financial services practice at KPMG, LLP.

**3.    Donald E. Royer, Executive Vice President and General Counsel**

Mr. Royer has served in various capacities in the California financial services industries.  In 2007, he acted as a consultant in representing various mortgage lenders. In 2006, Mr. Royer joined CCBI and CCB as Executive Vice President and General Counsel.  From 2002 to 2006, Mr. Royer was in private practice as an attorney.  From 1991 to 2002, Mr. Royer was employed by Downey Savings as Executive President, General Counsel, and Corporate Secretary.  From 1988 to 1991, Mr. Royer served as Executive Vice President and General Counsel of American Savings Bank, and from 1984 to 1988 was the Executive Vice President and General Counsel of Financial Corporation of America and American Savings and Loan Association.  Before that, Mr. Royer held positions as general counsel for American Savings and Loan Association.  He began his legal career at First Federal Savings.

**D.    Selected Financial Information**

Attached as Exhibit "1," for general informational purposes, is the Debtor's operating report filed with the Office of the United States Trustee for the month ended July 31, 2009.  The Debtor's Bankruptcy Schedules are attached for general informational purposes as Exhibit "2."

# IV. THE CHAPTER 11 CASE

## A. Events Leading to the Bankruptcy Filing

FRC was one of the nation's largest sub-prime lenders. Although FRC resold the vast majority of all loans that it originated via "whole loan" sales, FRC remained obligated to repurchase loans that it had sold if they experienced a payment default within a certain period of time after being sold. FRC's loan repurchase obligations increased significantly in 2006.

A combination of loan repurchase losses and deterioration in the sub-prime loan market caused FRC to experience significant erosion in its statutorily mandated capital ratios. Consequently, on February 27, 2007, the FDIC provided Debtor and FRC with a Cease and Desist Order, which required the Debtor to take steps to improve FRC's Tier 1 capital ratio and significantly adjust and improve its sub-prime lending practices. As a result of the Cease and Desist Order, FRC decided to completely terminate all new sub-prime funding commitments on March 7, 2007, although it continued to honor existing funding commitments made before March 7, 2007. FRC reached agreements to sell its remaining residential and commercial real estate loan portfolios to third parties during the first half of 2007.

Even after ceasing residential lending, disposing of residential and commercial loan portfolios, completing the sale of significant portions of FRC's assets, and taking other steps to comply with the Cease and Desist Order, the Debtor was not able to sufficiently repair the damage to FRC's capital position caused by the sub-prime lending crisis. The FDIC issued a Supervisory Prompt Corrective Action Directive (the "Directive") on March 26, 2008, which that gave the Debtor sixty days to either recapitalize FRC or accept an offer for FRC to be acquired by another depository institution. In order to comply with the Directive, the Debtor reached an agreement with CapitalSource, Inc. ("CapitalSource"), where CapitalSource would agree to purchase substantially all of FRC's principal assets and assume its deposits. Because the Debtor was a publicly traded entity, it would have to comply with SEC proxy rules in order to complete the sale to CapitalSource. However,

Welland, Golden,
Smiley, Wang, Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   given its dire financial condition, the Debtor determined that it would be unable to

2   complete an audit of its 2007 consolidated financial statements and required subsequent

3   quarterly financial statement reviews.  Under SEC proxy rules, both of these items would

4   have to be completed before the Debtor could solicit shareholder approval of the

5   CapitalSource Transaction.  Given the difficulties associated with completing a sale

6   outside of bankruptcy, the Debtor determined that its best option for completing the sale

7   would be to seek protection under Chapter 11 of the Bankruptcy Code and complete the

8   sale.  Accordingly, on June 18, 2008 (the "Petition Date"), the Debtor filed a voluntary

9   petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor has continued to

10  manage its Assets and properties as a debtor-in-possession pursuant to Bankruptcy Code

11  sections 1107 and 1108.

12          As of the Petition Date, the Debtor's books and records reflected that the Debtor's

13  common stock was held by approximately 120 holders of record, with no person or entity

14  holding more than 20% of the Debtor's common stock.  The Debtor's common stock was

15  listed on the New York Stock Exchange ("NYSE") under the "FMT" symbol, although the

16  NYSE suspended trading of the Debtor's stock prior to the opening of trading on April 17,

17  2008.  Also as of the Petition Date, the Debtor had two issues of debt securities

18  outstanding.  On March 1, 1999, the Debtor issued its "Senior Notes," of which

19  approximately $166 million in principal remained outstanding on the Petition Date.

20  Tennenbaum Capital Partners, LLC, appears to hold over 95% of the Senior Notes.  On

21  March 6, 1996, the Debtor issued its 9% Junior Subordinated Debentures to the Debtor's

22  wholly-owned subsidiary, Fremont General Financing I, a Delaware business trust.

23  Fremont General Financing I in turn issued preferred securities that had been traded on

24  the NYSE under the symbol "FMTPR."  As of the Petition Date, the Debtor's books and

25  records reflected that the Trust Preferred Securities stock was held by approximately

26  1,750 holders of records and that approximately $103 million in principal remained

27  outstanding.

28

343420.2

SECOND AMENDED
DISCLOSURE STATEMENT

**B.** **Significant Events During the Chapter 11 Case**

    **1.** **Retention of Debtor's Professionals and Agents**

After filing its petition for reorganization, the Debtor retained the law firm of Patton Boggs LLP, as reorganization counsel, effective as of June 18, 2008. The Debtor also retained the law firm of Stutman, Treister & Glatt, PC, to assist Patton Boggs in rendering bankruptcy-related services to the Debtor. The Bankruptcy Court approved the Debtor's employment of these professionals, effective as of the Petition Date, pursuant to orders entered on September 29, 2008.

The Debtor has also retained (i) FTI Consulting, Inc. ("FTI") to provide interim management and management assistance to the Debtor, (ii) the law firms of Willenken, Wilson, Loh & Lieb, LLP, Epstein Becker & Green, PC and The Caldwell Law Firm as special litigation counsel, and (iii) KPMG Corporate Finance LLC ("KPMGCF") as the Debtor's exclusive financial advisor in conjunction with a contemplated transaction that could form the basis for a plan of reorganization.

The Debtor has also retained Squar, Milner, Peterson, Miranda & Williamson, LLP and Ernst & Young, LLP as the Debtor's independent accountant and auditor.

    **2.** **Appointment of the Creditors' Committee and Equity Committee**

On July 1, 2008, the U.S. Trustee appointed an official committee of creditors holding unsecured claims against the Debtor (the "Creditors' Committee") to represent the interests of the general unsecured creditors of the Estate. The members of the Creditors' Committee are: (1) Tennenbaum Multi-Strategy Master Fund, which serves as the chair; (2) HSBC Bank USA, N.A., the Indenture Trustee for holders of the Debtor's 7.875% Senior Notes; (3) Wells Fargo Bank, N.A., as successor trustee to the Bank of New York Trust Company, N.A., the Indenture Trustee for holders of the Debtor's 9% Junior Subordinated Debentures; (4) Dennis & Loretta Danko Family Trust; and (5) Rita Angel. In addition, Howard Amster and Roark, Rearden & Hamot Capital Management serve as "ex officio" members of the Creditors Committee.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  The Creditors Committee has employed Klee, Tuchin, Bogdanoff & Stern LLP

2  ("Klee Tuchin") as its counsel, the Solon Group, Inc. ("Solon") as its financial advisor on a

3  limited basis in the Case, and Bocarsly Emden Cowan Esmail & Arndt LLP ("Bocarsly") as

4  its tax advisor.

5  On July 8, 2008, the U.S. Trustee appointed the Equity Committee to represent the

6  interests of the equity Holders. The initial members of the Equity Committee were:

7  (1) John M. Koral; (2) William M. Stern; (3) Paul Dagostino; (4) William Holmes; (5) Frank

8  E. Williams, Jr.; (6) Jeffrey M. Pies; (7) Lynn Ehlers; (8) John M. Mlynick; and (9) Jonathan

9  Siegal. The latter two later resigned from the Equity Committee. The Equity Committee

10 has employed, with the Bankruptcy Court's approval, Weiland Golden as its counsel and

11 CRG as its financial advisor.

### 3.    Consummation of the CapitalSource Transaction

13 Within a week of the Petition Date, the Debtor filed its Motion for Order Authorizing

14 the Debtor to Use the Shares of Non-Debtor Subsidiary to Consummate the

15 CapitalSource Transaction (the "CapitalSource Motion"), which sought entry of an order

16 authorizing the Debtor, as sole shareholder, to use its shares of a non-debtor subsidiary to

17 consummate the CapitalSource Transaction. Following a hearing on July 17, 2008, the

18 Court entered an order approving the CapitalSource Motion, which order was supported

19 by accompanying Findings of Fact and Conclusions of Law.

20 The CapitalSource Transaction closed on or about July 25, 2008, and FRC

21 subsequently surrendered its banking charter to the state of California and changed its

22 name from Fremont Investment & Loan to Fremont Reorganizing Corporation. As a result

23 of the CapitalSource Transaction – which both the Creditors' Committee and the Equity

24 Committee supported – seizure of FRC by the FDIC was avoided and significant value

25 was preserved for all stakeholders.

### 4.    The Order Limiting Transfers of Equity

27 On the Petition Date, the Debtor filed an emergency motion for an order limiting

28 certain transfers of Equity Interests in the Debtor. The motion was filed because the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  Debtor's consolidated federal corporate income tax return for 2007 reflect NOLs of
2  $695,469,659 that, if preserved, could yield a tax benefit of more than $200 million.
3  However, the Debtor was concerned that unregulated postpetition trading of the Debtor's
4  equity interests could reduce or eliminate the value of the NOLs that it thought might be
5  critical to its reorganization.  Accordingly, the Debtor sought an order limiting and tailoring
6  restrictions on trading and requiring the Debtor to receive advance notice of any transfers
7  that could have the effect of jeopardizing the NOLs.  The Court granted the requested
8  relief with an order that was entered on June 19, 2008.

9       **5.**     **Insider Compensation**

10       During the Case, the Debtor sought Court approval of the post-petition
11  compensation of its current and past officers and directors, including Stephen H. Gordon,
12  David S. DePillo, Donald E. Royer, Richard A. Sanchez, and Thea K. Stuedli.  The Court
13  approved a stipulation on September 15, 2008, that set the post-petition compensation for
14  each of these officers or directors and established a mechanism for apportioning the
15  executive compensation cost among the Debtor and FRC.

16       **6.**     **Establishment of General Bar Date and Filing of Claims**

17       On September 4, 2008, pursuant to a Stipulated Order Regarding the Claims Bar
18  Date, the Court established November 10, 2008 as the general claims bar date for all
19  Persons other than governmental units to file proofs of Claim or Equity Interests arising
20  prior to the Petition Date, pursuant to section 501 of the Bankruptcy Code, and
21  (2) December 15, 2008 as the claims bar date for governmental units to file pre-petition
22  Claims.

23       Over 900 Proofs of Claim have been filed against the Debtor, including a limited
24  number after the Claims Bar Date.  Based on its preliminary review, it appears that many
25  of these asserted Claims are invalid and/or inflated and, ultimately after Claims objection
26  litigation, the aggregate Claims amounts should be significantly reduced.

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

21

1        **7.**     **Relief from Stay Motions – McIntyre, Faigin, and The Bank of**

2                 **New York Mellon**

3        During the Case, two of the Debtor's former Officers, James A. McIntyre and Alan

4 C. Faigin have filed motions seeking relief from the automatic stay under Bankruptcy

5 Code section 362. Former CEO McIntyre sought relief from the automatic stay to allow

6 him to pursue litigation requiring the Debtor to hold a shareholder's meeting. After

7 conducting a hearing on the matter, the Bankruptcy Court entered an order on October

8 24, 2008, denying, without prejudice, McIntyre's motion to lift the stay.

9        Former General Counsel Faigin filed a motion to lift the automatic stay in order to

10 pursue state court litigation against the Debtor and FRC under a theory that both entities

11 were jointly liable for amounts that were still allegedly owed to Faigin under his pre-

12 petition employment contract with the Debtor. Although the Debtor, but not FRC, was a

13 party to Faigin's employment contract, Faigin had attempted to pursue arbitration against

14 FRC, which is not a debtor in bankruptcy, under a theory that both Debtor and FRC were

15 joint employers of Faigin. The Bankruptcy Court entered an order on December 24, 2008

16 allowing Faigin's litigation against FRC to proceed on the condition that Faigin amend his

17 complaint to remove all allegations against the Debtor and refrain from seeking discovery

18 from the Debtor in connection with the state court litigation.

19        More recently, The Bank of New York Mellon ("BONY") filed a motion to lift the

20 automatic stay so that prepetition litigation that BONY commenced against the Debtor for

21 alleged interference with a contractual relationship between BONY, the New York

22 Insurance Department, and FIC, which was pending in the United States District Court,

23 Central District of California, on the Petition Date, could resume. The hearing on the

24 motion has been continued several times. BONY's prepetition litigation claims have been

25 asserted in the Case through a proof of claim BONY filed in excess of $20,000,000. The

26 Debtor disputes any liability to BONY and whether the Debtor had the requisite intent.

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

343420.2              22                       

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    **8.    Engagement of KPMG Corporate Finance and the Attempts to**

2    **Negotiate a Consensual Plan**

3    On January 6, 2009, the Bankruptcy Court approved the engagement of KPMG

4    Corporate Finance LLC ("KPMGCF"), a subsidiary of KPMG LLP (UK), as the Debtor's

5    financial advisor to locate potential acquirers of the Debtor who might act as a sponsor in

6    a potential plan of reorganization. In connection with this engagement, the Equity

7    Committee is informed that KPMGCF distributed marketing materials informing potential

8    investors of the opportunity to act as the sponsor of the Debtor's plan of reorganization.

9    As a result of KPMGCF's marketing efforts, 26 parties entered into non-disclosure

10   agreements and were provided access to information about the Debtor and its

11   management. Ultimately, the Debtor received six non-binding letters of intent from

12   interested third parties.

13   In Spring 2009, the Debtor evaluated each of these proposals to determine whether

14   the implementation of any of such proposals through a plan of reorganization was viable

15   and consulted with the committees to determine their positions.  Although the Equity

16   Committee was supportive of the Debtor's efforts and even contemplated being a co-

17   sponsor of a plan with the Debtor, the Creditor's Committee was not supportive.

18   Ultimately, the Debtor proposed its own plan.

19   **9.    Exclusivity**

20   Pursuant to the United States Bankruptcy Code, a debtor-in-possession, such as

21   the Debtor, has 120 days from the date of the filing of its Chapter 11 petition with the

22   Bankruptcy Court in which to file a plan of reorganization, subject to Bankruptcy Court's

23   discretion to grant extensions of this exclusive period. During this exclusive period no

24   other person or entity is permitted to file a plan of reorganization.  The Debtor obtained an

25   extension of time to June 1, 2009, to propose its plan and September 1, 2009, to solicit

26   votes on the plan.  The Debtor filed its plan and the Creditors' Committee filed a motion to

27   terminate exclusivity that was set for a hearing on July 14, 2009.  The Equity Committee

28