Christopher E. Prince (State Bar No. 183553)
cprince@lesnickprince.com
LESNICK PRINCE LLP
185 Pier Avenue, Suite 103
Santa Monica, CA 90405
Telephone: (213) 291-8984
Facsimile:  (310) 396-0963

Carole Neville (*Pro Hac Vice* Pending)
cneville@sonnenschein.com
Peter D. Wolfson (*Pro Hac Vice* Pending)
pwolfson@sonnenschein.com
SONNENSCHEIN, NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800

Attorneys for New World Acquisition, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>FREMONT GENERAL CORPORATION, a Nevada corporation,<br><br>Debtor.<br><br><br><br><br><br><br><br>Taxpayer ID No. 95-2815260 | Case No. 8:08-bk-13421-ES<br><br>CHAPTER 11 CASE<br><br>**MOTION FOR ORDER APPROVING NEW WORLD ACQUISITION, LLC'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CAROLE NEVILLE IN SUPPORT THEREOF**<br><br>**DATE:   To Be Set**<br>**TIME:**<br><br>**CTRM:   5A** |

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE,**

**AND OTHER INTERESTED PARTIES:**

New World Acquisition, LLC ("New World"), equity holders of Fremont General

Corporation ("Debtor" or "Fremont"), files this *Motion for Order Approving New World Acquisition,*

*LLC's Disclosure Statement Describing Chapter 11 Plan of Reorganization* (the "Motion"), and the attached Declaration of Carole Neville in support of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELIEF REQUESTED

By this Motion, New World seeks approval of its Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure ("FRBP") 3017. Court approval of the Disclosure Statement will permit immediate solicitation of New World's Plan.

### II. FACTUAL BACKGROUND

#### A. History of the Debtor

The Debtor is a publicly-held Nevada corporation that has functioned as a financial services holding company. Its prepetition business operations were conducted through two intermediate holding companies--one for banking operations and one for insurance operations.

#### B. The Chapter 11 Case

On June 18, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued to manage its assets and properties as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

As of the Petition Date, the Debtor's books and records reflected that the Debtor's common stock was held by approximately 120 holders of record, with no person or entity holding more than 20% of the Debtor's common stock. The Debtor's common stock was listed on the New York Stock Exchange ("NYSE") under the "FMT" symbol, although the NYSE suspended trading of the Debtor's stock prior to the opening of trading on April 17, 2008.

Also, as of the Petition Date, the Debtor had two issued of debt securities outstanding. On March 1, 1999, the Debtor issued 7.875% senior Notes in principal face amount of $200,000 (the "Senior Notes,)" of which approximately $176 million remained outstanding on the Petition Date. On March 6, 1996, the Debtor issued its 9% Junior Subordinated Debentures (the "Junior Notes") to the Debtor's wholly-owned subsidiary, Fremont General Financing I, a Delaware business trust. Fremont General Financing I in turn issued 9% Trust Originated Preferred (the "TOPrS") that had been traded on the NYSE under the symbol "FMTPR." As of the Petition Date, the Debtor's books

and records reflected that the Trust Preferred Securities stock was held by approximately 1,750 holders of records and that approximately $107 million in principal remained outstanding. New World believes that the Debtor is not default under the Junior Notes or the TOPrS.

On July 1, 2008, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of creditors (the "Creditors' Committee") holding unsecured claims against the Debtor to represent the interests of the general unsecured creditors of the estate. On July 8, 2008, the U.S. Trustee appointed an Official Committee of Equity Holders (the "Equity Committee") to represent the interests of the equity holders.

### C.     The Plans and Disclosure Statements on File

A debtor-in-possession has 120 days from the date of the filing of its chapter 11 petition with the bankruptcy court in which to file a plan of reorganization, subject to bankruptcy court's discretion to grant extensions of this exclusive period. The Debtor obtained an extension of time to June 1, 2009, to propose its plan and September 1, 2009, to solicit votes on the plan. The Creditors' Committee filed a motion to terminate exclusivity that was set for a hearing on July 14, 2009. The Equity Committee joined in that motion and the Court granted it and terminated exclusivity effective July 17, 2009.

Since that date the Creditors' Committee and the Equity Committee each filed and amended respective plan and disclosure statement several times, as recently as September 30, 2009. The Debtor also has a plan and disclosure statement on file.

The Equity Committee plan differs from the Creditor Committee plan in several important respects. First, the Equity Committee plan provides for a reorganization of the Debtor's business for the benefit of all constituents, whereas the Creditors' Committee plan is, in effect, a winddown of the businesses to pay claims of the unsecured creditors, over time at an increasing rate of interest. In order to administer the wind down, the Creditors' Committee plan provides for a Board that is reconstituted as claims are paid, a plan administrator instead of a management team, and creditor trust to hold the wind down assets and interests. In stark contrast, the Equity Committee plan proposes to pay certain unsecured claims in full with post petition interest on the effective date of the plan and to reinstate the Debtor's Junior Notes. New World and the Equity committee believe that the treatment

of creditors in that manner leaves them unimpaired.

The New World plan follows the model of the Equity Committee Plan with respect to the treatment of creditors so as to leave them unimpaired, but it has several important differences. The New World plan provides the Reorganized Debtor with increased liquidity in the form of $4 million equity contribution and an exit financing facility, secured by the Reorganized Debtors loan portfolio, for additional liquidity of $20 million. In addition, the New World plan proposes a Board of new members selected to both (a) represent the existing holders, and (b) to bring investment and financial expertise to the reorganized debtor's post confirmation business.

### III. APPROVAL OF THE DISCLOSURE STATEMENT

Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent may not solicit the acceptance or rejection of a plan of reorganization unless the holders of the relevant claims or interest, as applicable, are provided at or before the time of such solicitation, with a disclosure statement approved by a bankruptcy court that contains "adequate information" regarding the debtors' plan of reorganization. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" in relevant in part to mean:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interest of the relevant claims to make an informed judgment about the plan….

11 U.S.C. §1125(a)(1). Thus, a disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan of reorganization. *See In re Momentum Mfg. Corp.*, 25 F. 3d 1132, 1136 (2d Cir. 1994); *see also In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995) (adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can provide the chapter 11 policy of fair settlement through a negotiation process between informed interested parties") (citation omitted). This particular point, especially in light of

its underlying notions of practicality and flexibility, also is underscored in the legislative history of section 1125 of the Bankruptcy Code:

> Previously what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation…. In chapter 11 cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

*See* H.R. Rep. 595, at 408-09 (1977).

Courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code. *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under §1125(a)…."); *see also In re Oxford Homes*, 204 B.R. 264, 267 (Bankr. D.Me. 1977) (noting Congress intentionally drew vague contours of what constitutes adequate information so that bankruptcy courts can exercise discretion to tailor them to each case's particular circumstances). This grant of discretion is intended to permit courts to tailor the disclosures made in connection with the solicitation of votes on a plan of reorganization to facilitate the effective reorganization of debtors in a broad range of businesses and circumstances. *See* H.R. Rep. 595, at 409; *Texaco*, 82 B.R. at 682 (stating bankruptcy judges have a clear congressional mandate to exercise "broad discretion in their supervision of corporate reorganizations"). Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

New World 's Disclosure Statement contains ample and adequate information to allow parties in interest to make informed judgments about and, to the extent appropriate, to vote on the Plan. Importantly, the Disclosure Statement includes information regarding (a) the Debtor and its assets, liabilities, and businesses, (b) the general economic conditions preceding the Debtor's

decision to commence this chapter 11 case, (c) the classification and treatment of claims and interests under the Plan, (d) other material terms of the Plan and implementation, and (e) information concerning the projected financial performance, valuation and other financial information of reorganized Fremont.  New World has relied on the amended disclosure statements filed by the Debtor and both official Committees for basic information about the debtor, its history and its post petition dealings.  Accordingly, New World Group respectfully submits that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and should be approved.

## IV. <u>CONCLUSION</u>

Based on the foregoing, the New World Group respectfully requests entry of an order granting the relief requested in the Motion and such other and further relief as the Court may deem just and proper.

Dated:  October 13, 2009

Respectfully submitted,

LESNICK PRINCE LLP

By: <u>  /s/ Christopher E. Prince  </u>
Christopher E. Prince (State Bar No. 183553)
cprince@lesnickprince.com
185 Pier Avenue, Suite 103
Santa Monica, CA 90405
Telephone: (213) 291-8984
Facsimile:  (310) 396-0963

Attorneys for New World Acquisition, LLC

# **DECLARATION OF CAROLE NEVILLE**

I, Carole Neville, declare as follows:

1.  I am an attorney at law duly licensed to practice in the State of New York. My application for admission to practice in this Court for this matter is pending. I am a partner in the law firm of Sonnenschein Nath & Rosenthal, counsel for New World Acquisition, LLC ("New World"), equity holders of Fremont General Corporation ("Debtor" or "Fremont"). This declaration is filed in support of the *Motion for Order Approving New World Group Amended Disclosure Statement Describing Chapter 11 Plan of Reorganization* (the "Motion") filed by the New World. Unless otherwise defined, capitalized terms used in this declaration shall have the same meaning ascribed to them in the Motion. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.  New World has had the advantage of three detailed disclosure statements on which to base its own disclosure statement. As a result, New World has been able to draw upon the descriptions of the Debtor's pre petition operations, its post petition compromises and settlements, the operations of its subsidiaries and other events and circumstances customarily described in meeting the requirements of section 1125.

3.  The New World Plan follows the model of the Equity Committee Plan with respect to the treatment of creditors so as to leave them unimpaired, but its Plan has several important differences. New World's Plan provides the Reorganized Debtor with increased liquidity in the form of $4 million equity contribution and an exit financing facility, secured by the Reorganized Debtor's loan portfolio, for additional liquidity of $20 million. In addition, the New World Plan proposes a Board of new members selected to (a) represent the existing holders and (b) to bring investment and financial expertise to the reorganized debtor's post confirmation business. New World's Disclosure Statement describes and highlights those differences and provides creditors and equity holders the information necessary to make an informed decision with respect to the Plan.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of October at New York, New York.

*[signature: Carole Neville]*

Carole Neville

17655456\V-1

-8-