1  THEODORE B. STOLMAN (State Bar No. CA 52099)
   TStolman@Stutman.com
2  WHITMAN L. HOLT (State Bar No. CA 238198)
   WHolt@Stutman.com
3  STUTMAN, TREISTER & GLATT, P.C.
4  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA  90067
5  Telephone:     (310) 228-5600
   Facsimile:     (310) 228-5788
6
7  ROBERT W. JONES (State Bar No. TX 10951200)
   RWJones@pattonboggs.com
8  BRENT R. MCILWAIN (State Bar No. TX 24013140)
   BMcIlwain@pattonboggs.com
9  PATTON BOGGS LLP
   2000 McKinney Avenue, Suite 1700
10 Dallas, TX  75201-8001
   Telephone:     (214) 758-1500
11 Facsimile:     (214) 758-1550
12 Reorganization Counsel for Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>FREMONT GENERAL CORPORATION, a Nevada corporation,<br><br>Debtor.<br><br>Tax I.D. 95-2815260<br><br><u>Debtor's Mailing Address</u>:<br>175 N. Riverview Drive<br>Anaheim, CA  92808 | Case No. 8:08-bk-13421-ES<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING STIPULATIONS BY AND AMONG DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, FREMONT REORGANIZING CORPORATION, AND FREMONT GENERAL CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD E. ROYER IN SUPPORT THEREOF**<br><br>**_Hearing_**<br>Date:    March 9, 2010<br>Time:    10:30 a.m.<br>Place:   Courtroom 5A<br>         411 West Fourth Street<br>         Santa Ana, California |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..............................4

I. FACTUAL BACKGROUND .............................................4

    A.    Status Of The Case And Jurisdiction. ..................4

    B.    The Background "Repurchase" Disputes Between
          Deutsche Bank And FRC. ................................4

    C.    Summary Of The Stipulations. .........................8

II. ARGUMENT ......................................................10

    A.    Applicable Legal Standards. ..........................10

    B.    The Stipulations Are Reasonable, Fair, And
          Equitable; They Should Be Approved By The
          Court. ...............................................13

    C.    The Proposed Order. ..................................16

III. CONCLUSION ..................................................17

DECLARATION OF DONALD E. ROYER ................................18

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Century Glove, Inc. v. First Am. Bank*,
    860 F.2d 94 (3d Cir. 1988) ............................... 15

4

5

*In re Coram Healthcare Corp.*,
    315 B.R. 321 (Bankr. D. Del. 2004) ...................... 12

6

*In re Flight Trans. Corp. Sec. Litig.*,
    730 F.2d 1128 (8th Cir. 1984) ........................... 12

7

8

*Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*,
    336 B.R. 87 (Bankr. D. Del. 2005), *aff'd*, 2006 U.S. Dist. LEXIS 72049 (D. Del. Oct. 2, 2006) ...................... 10

9

10

*Kowal v. Malkemus (In re Thompson)*,
    965 F.2d 1136 (1st Cir. 1992) ........................... 15

11

12

*In re Lee Way Holding Co.*,
    120 B.R. 881 (Bankr. S.D. Ohio 1990) ................... 13

13

14

*Martin v. Kane (In re A & C Props.)*,
    784 F.2d 1377 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986) ............................................. 11, 12

15

16

*Nellis v. Shugrue*,
    165 B.R. 115 (S.D.N.Y. 1994) ........................... 12

17

18

*Newman v. Stein*,
    464 F.2d 689 (2d Cir.), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972) ................. 12

19

20

*Official Comm. of Unsecured Creditors v. James Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.)*,
    103 B.R. 420 (S.D.N.Y. 1989) ........................... 13

21

22

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*,
    523 F. Supp. 2d 376 (S.D.N.Y. 2007) .................... 11

23

24

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994) ..................................... 11

25

26

*United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*,
    669 F.2d 1325 (9th Cir. 1982) .......................... 11

27

28

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson),*
       839 F.2d 610 (9th Cir. 1988) ............................. 10

**STATUTES AND RULES**

11 U.S.C. § 105(a) ......................................... *passim*
11 U.S.C. § 1107(a) ............................................ 4
11 U.S.C. § 1108 .............................................. 4
28 U.S.C. § 157 ............................................... 4
28 U.S.C. § 157(b) ............................................ 4
28 U.S.C. § 1334 ............................................. 4
28 U.S.C. § 1408 ............................................. 4
28 U.S.C. § 1409 ............................................. 4
Fed. R. Bankr. P. 9019(a) ............................... *passim*

1  **TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE ERITHE A. SMITH;**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE; THE OFFICIAL COMMITTEE OF**

3  **UNSECURED CREDITORS; THE OFFICIAL COMMITTEE OF EQUITY HOLDERS; AND**

4  **OTHER INTERESTED PARTIES:**

5  **PLEASE TAKE NOTICE** that Fremont General Corporation, the

6  debtor and debtor in possession in the above-captioned chapter 11

7  case (the "Debtor"), hereby moves (the "Motion") pursuant to

8  section 105(a) of title 11 of the United States Code (the

9  "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of

10  Bankruptcy Procedure (the "Bankruptcy Rules") for an order

11  approving three related *Agreements for Withdrawal and Non-Assertion*

12  *of Claims* (collectively, the "Stipulations"), each entered into by

13  and among Deutsche Bank National Trust Company, not in its entity

14  capacity but solely as the named trustee of certain trusts (the

15  "Trusts") created pursuant to certain pooling and servicing

16  agreements and trust agreements associated with the sale and/or

17  securitization of mortgage loans, all as more fully described in

18  the Stipulations ("Deutsche Bank"), non-debtor Fremont Reorganizing

19  Corporation ("FRC"), and the Debtor.  True and correct copies of

20  the executed Stipulations are attached as Exhibit "A," Exhibit "B,"

21  and Exhibit "C" to the accompanying *Declaration of Donald E. Royer*

22  (the "Royer Declaration").

23  As set forth in the accompanying *Memorandum of Points and*

24  *Authorities* and the Royer Declaration, the Stipulations were

25  negotiated in good faith and are reasonable, fair, and equitable.

26  Approval of the Stipulations provides immediate benefits to the

27  Debtor's estate and all its stakeholders, while also avoiding the

28  potential for future litigation.  The Stipulations also resolve

1

1   disputes that would have required ongoing attention and commitment

2   of resources by both FRC and the Debtor on reasonable terms.

3          The Motion is based on and supported by these moving

4   papers, the following *Memorandum of Points and Authorities*, the

5   Royer Declaration, the pleadings and records on file herein, and

6   all such other evidence or argument as may be submitted to the

7   Court at or before any hearing on this Motion.

8          **PLEASE TAKE FURTHER NOTICE** that, notwithstanding the

9   availability of so-called "negative notice" procedures under Local

10  Bankruptcy Rule 9013-1(o)(1), the Debtor has set this Motion for

11  hearing on March 9, 2010 at 10:30 a.m., or as soon thereafter as

12  counsel may be heard, before the United States Bankruptcy Court for

13  the Central District of California (the "Court") in Courtroom 5A

14  located at the Ronald Reagan Federal Building and United States

15  Courthouse, 411 West Fourth Street, Santa Ana, California.

16         **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule

17  9013-1(f) requires that any objection, joinder, or response to the

18  Motion must be in writing; must be accompanied by supporting

19  evidence; must comply with Local Bankruptcy Rule 9013-1; and must

20  be filed with the Court no later than 14 days before the hearing on

21  the Motion.  Also, Local Bankruptcy Rule 9013-1(h) provides that if

22  you do not timely file and serve an objection or response to the

23  Motion, the Court may find that you have consented to the relief

24  requested herein.  In addition to service on the above-captioned

25  counsel and all other parties required to be served under Local

26  Bankruptcy Rule 9013-1, copies of any objection, joinder, or

27  response to this Motion should be served upon (1) counsel for FRC:

28  Jeffer, Mangels, Butler & Marmaro LLP, 1900 Avenue of the Stars,

1   7th Floor, Los Angeles, CA 90067, Attn: Barry V. Freeman, Esq. and

2   David Poitras, Esq.; and (2) counsel for Deutsche Bank: Morgan,

3   Lewis & Bockius LLP, One Market, Spear Street Tower, San Francisco,

4   CA 94105, Attn: John Rosenthal, Esq. and Kristine Bailey, Esq.

5         **WHEREFORE**, the Debtor respectfully requests that the

6   Court enter an order approving the Stipulations in substantially

7   the form attached as Exhibit A to the Stipulations.

8

9   DATED:  February 11, 2010     */s/Whitman L. Holt*

10                          THEODORE B. STOLMAN
WHITMAN L. HOLT

11                          STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION

12

13                          -and-

14                          ROBERT W. JONES
BRENT R. MCILWAIN

15                          PATTON BOGGS LLP

16                          Reorganization Counsel for
Debtor and Debtor in Possession

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTUAL BACKGROUND**

**A.    Status Of The Case And Jurisdiction.**

The Debtor is a financial services holding company and a publicly held Nevada corporation with approximately 78 million shares of presently outstanding common stock.  On June 18, 2008, the Debtor commenced this case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.  Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor continues to operate and manage its business as a debtor in possession.

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a "core" proceeding as that term is defined in 28 U.S.C. § 157(b).  The legal predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

**B.    The Background "Repurchase" Disputes Between Deutsche Bank And FRC.**

The legal entity now known as FRC historically engaged in commercial and residential real estate financing on a nationwide basis.  With the deterioration in the "subprime" residential real estate market, however, FRC began to experience significant losses and was subjected to numerous regulatory demands by the FDIC and the California Department of Financial Institutions.  In order to avoid further regulatory action, FRC entered into a transaction to transfer its banking operations to CapitalSource, Inc. or its designee.  That CapitalSource transaction was consummated after this Court's approval and closed on or about July 25, 2008.

4

1     In connection with its now-ceased mortgage origination

2   activities, FRC had entered into contracts with various larger and

3   nationally known financial institutions to transfer FRC's mortgages

4   into the broader capital markets.  Generally, such transfers were

5   accomplished by way of securitization transactions or whole loan

6   sales.  In both scenarios, FRC would from time to time enter into

7   contracts (often called a *Mortgage Loan Purchase Agreement* – a

8   "MLPA") under which FRC might become obligated to "repurchase" the

9   transferred mortgages.[1]  For example, a MLPA might contain various

10  representations or warranties about the transferred loans and their

11  origination process, some lasting for the loans' 30-year "life,"

12  which if breached might require FRC to repurchase the related

13  mortgages.

14     FRC is hardly the only former loan originator to face

15  disputes about "repurchase" claims; similar claims have been

16  asserted against dozens of current and former financial

17  institutions.  These types of disputes regarding purported breaches

18  of mortgage-based representations and warranties, as well as the

19  resulting damages, if any, are highly fact-intensive.  Indeed,

20  given the high turnover among institutional purchasers of loans and

21  securitized products and their inability to provide proof necessary

22  to support each claim, as well as the highly factual nature of the

23  reliance and damages issues raised by repurchase fights, most such

24  claims are addressed and resolved without litigation and at very

25  substantial discounts from the claims' stated face amounts.

---

[1]   In almost all instances, the Debtor was not a party to these
mortgage transactions and related "repurchase" obligations in
any respect; the Debtor did not originate the underlying loans,
was not a party to the relevant agreements, and did not
guarantee FRC's "repurchase" obligations.

1    Consistent with this trend, many millions of dollars of such

2    "repurchase" claims asserted by various counterparties against FRC

3    have been resolved for amounts far less than the asserted amounts.

4        Among FRC's MLPA counterparties were Goldman Sachs or an

5    affiliate (which is the series of transactions subject to Royer

6    Declaration Ex. "A"), Greenwich Capital Financial Products or an

7    affiliate (which is the series of transactions subject to Royer

8    Declaration Ex. "B"), and Carrington Mortgage Services or an

9    affiliate (which is the series of transactions subject to Royer

10    Declaration Ex. "C").

11        In connection with these various transactions, Deutsche

12    Bank assumed the role of trustee.  The several counterparties

13    bought significant quantities of mortgage loans from FRC, most of

14    which are not subject to "repurchase" demands.  The unpaid

15    principal balance of the loans for which Deutsche Bank acts as

16    trustee and *has* asserted "repurchase" claims (in the case of the

17    series of transactions covered by Royer Declarations Exs. "A" &

18    "B") and *has* asserted or *could* assert "repurchase" claims (in the

19    case of the series of transactions covered by Royer Declaration Ex.

20    "C") approximates, in the aggregate for the three series of

21    transactions, over $98 million.  Absent agreed settlements,

22    Deutsche Bank would eventually need to prosecute its alleged

23    repurchase claims by way of litigation against FRC (which Deutsche

24    Bank has not commenced).  Such litigation would be very time-

25    consuming and costly on both sides, particularly since virtually

26    every underlying mortgage loan would need to be analyzed on an

27    individualized basis.

28        Unlike certain other "repurchase" counterparties

1   (including US Bank and Wells Fargo Bank), Deutsche Bank has not

2   been active to date in the Debtor's chapter 11 case, but Deutsche

3   Bank has been actively involved in ongoing negotiations with FRC

4   about its claims against that entity.  Nevertheless, Deutsche Bank

5   recently sent the Debtor and FRC a letter in which Deutsche Bank

6   stated that it may begin to press similar positions in the case.

7   *See* Royer Declaration, Exhibit "D."  Although the Trusts have no

8   direct claims against the Debtor, Deutsche Bank now apparently

9   maintains that the Trusts' positions as creditors of FRC could be

10  adversely affected by the mergers proposed in each of the five

11  pending chapter 11 plans.  Thus, absent settlements, Deutsche Bank

12  could prosecute objections to confirmation of the pending plans,

13  which would leave the reorganized Debtor with complex, unresolved

14  litigation and potentially material liabilities that could distract

15  its management and adversely affect its post-confirmation finances.

16  Such litigation could involve significant discovery and a hotly

17  contested hearing before this Court about FRC's actual "repurchase"

18  exposure and the adequacy of the reserves proposed by the five

19  different plans.  Accordingly, consummation of the settlements set

20  forth in the Stipulations will eliminate the need for such plan-

21  related litigation with Deutsche Bank, and will thereby save

22  potentially significant legal and other expenses for the Debtor's

23  estate.  Moreover, the Stipulations further resolve and settle any

24  additional arguments Deutsche Bank might make concerning the form

25  or substance of the FRC creditor notice – a dispute directly

26  relevant to this bankruptcy case's administration.

27  ///

28  ///

7

C.    **Summary Of The Stipulations.**[2]

The Stipulations are intended to provide for a resolution of all certain repurchase claims that Deutsche Bank has alleged against FRC in respect of the three series of transactions.

More specifically, the parties have agreed, subject to approval by this Court, that FRC will pay to Deutsche Bank the combined sum of 5,039,612 dollars (the "Settlement Payments") with respect to the three series of transactions, plus an additional sum equal to actual expenses, but not to exceed $137,500, intended to compensate Deutsche Bank for its aggregate fees and expenses incurred in connection with the alleged repurchase claims (the "Expense Payments"). (*See* Stipulations § 2.) Notably, inclusion of the Expense Payments in the settlements is generally consistent with the requirements of the MLPAs and the associated pooling and servicing agreements. In exchange, Deutsche Bank will fully waive and release all repurchase claims that have been asserted (or, in the case of the transactions subject to Royer Declaration Ex. "C," could be asserted) against FRC on behalf the underlying Trusts for which Deutsche Bank serves as trustee in connection with the three series of transactions. (*See id.* § 3(a).)

Although the Debtor's estate is not liable for the Trusts' Breach Claims against FRC, in light of the adoption of a merger of FRC into the Debtor as the means for implementation of all five of the proposed plans in this case and the consequential

---

[2]    Nothing in this summary shall be construed in any way to limit or alter any of the provisions of the Stipulations, or to guide in the interpretation of the Stipulations in any other proceeding. This summary is provided merely as a convenience to the Court and parties in interest evaluating the Stipulations.

consolidation of FRC's assets and liabilities into the Debtor's balance sheet, the Debtor has concluded that it would be desirable for the Debtor to facilitate the resulting settlements to the fullest extent possible in order to assist with the possible confirmation of one of those plans. Accordingly, the Stipulations provide that the Debtor will release certain claims that its estate may have against Deutsche Bank (*see id.* § 3(c)) or against FRC (*see id.* § 3(d)), including any claims that may accrue on account of any inconvenience, delay, or costs incurred by the Debtor's estate as a result of ongoing disputes between Deutsche Bank and FRC, whether part of the plan confirmation process or otherwise. The Debtor will not make or receive any cash payments or agree to the allowance of any claims against its estate; rather, the only direct impact on the Debtor's estate results from the release of certain claims that may exist against Deutsche Bank or FRC.

The Stipulations are not effective until approved by this Court and until all other conditions to effectiveness set forth therein are satisfied. (*See id.* § 4.) Unlike certain other settlements approved by this Court, however, the Stipulations do not provide for this Court to retain continuing jurisdiction over the parties.

The Stipulations are the product of good faith, arm's length negotiations undertaken by the Debtor, FRC, Deutsche Bank, and their respective counsel over a significant period. The Stipulations also benefited from input by the official committees, both of which approved its economic terms. The Debtor and FRC both believe the Stipulations fairly resolve matters with Deutsche Bank without the cost and delay attendant to litigation and are

reasonable under the circumstances.  Thus, the Debtor submits that consummation of the Stipulations is in the best interests of its estate, creditors, shareholders, and all parties concerned.

## II.  ARGUMENT

### A.  Applicable Legal Standards.

Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019(a) in turn states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

The Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988).  Indeed, "[p]ursuant to Bankruptcy Rule 9019(a), the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court. In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interest of the estate." *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citations omitted), *aff'd*, 2006 U.S. Dist. LEXIS 72049 (D. Del. Oct. 2, 2006).

"The federal courts have a well-established policy of

1    encouraging settlement to promote judicial economy and limit the

2    waste of judicial resources." *Russian Standard Vodka (USA), Inc.*

3    *v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384

4    (S.D.N.Y. 2007); *see also, e.g.*, *U.S. Bancorp Mortgage Co. v.*

5    *Bonner Mall P'ship*, 513 U.S. 18, 27-28 (1994) (discussing the

6    general utility of settlement vis-à-vis judicial economy).  The

7    force of this established federal policy is particularly acute in

8    the bankruptcy context, where "[t]he purpose of a compromise

9    agreement is to allow the trustee and the creditors to avoid the

10   expenses and burdens associated with litigating sharply contested

11   and dubious claims." *Martin v. Kane (In re A & C Props.),* 784 F.2d

12   1377, 1380-81 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986).

13   Accordingly, in approving a proposed agreement, the Court need not

14   conduct an exhaustive investigation of the claims sought to be

15   compromised.  *See, e.g.*, *United States v. Alaska Nat'l Bank (In re*

16   *Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather,

17   it is sufficient that the Court find that the proposed settlement

18   was negotiated in good faith and is reasonable, fair, and

19   equitable. *See In re A & C Props.,* 784 F.2d at 1381.

20          The Ninth Circuit has further identified the following

21   factors for consideration in determining whether a proposed

22   settlement agreement is reasonable, fair, and equitable:

23          (a)   the probability of success in the
                  litigation;
24
25          (b)   the difficulties, if any, to be
                  encountered in the matter of collection;
26          (c)   the complexity of the litigation involved,
                  and the expense, inconvenience, and delay
27                necessarily attending it;
28

1               (d)   the paramount interest of the creditors

                     and a proper deference to their reasonable

2                      views in the premises.

3 *See id.* (quoting *In re Flight Trans. Corp. Sec. Litig.*, 730 F.2d

4 1128, 1135 (8th Cir. 1984)).

5         Consideration of these factors does not require the Court

6 to determine whether the settlement presented is the best one that

7 could possibly be achieved. *See, e.g.*, *Nellis v. Shugrue*, 165 B.R.

8 115, 123 (S.D.N.Y. 1994) (Sotomayor, J.) (stating that "in

9 assessing the fairness of the settlement, a judge does not have to

10 be convinced that the settlement is the best possible compromise or

11 that the parties have maximized their recovery"); *In re Coram*

12 *Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he

13 court does not have to be convinced that the settlement is the best

14 possible compromise."). Instead, this Court need only "canvass"

15 the issues to determine whether the proposed settlement falls

16 "below the lowest point in the zone of reasonableness." *Newman v.*

17 *Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom. Benson v.*

18 *Newman*, 409 U.S. 1039 (1972). *See also, e.g.*, *Nellis*, 165 B.R. at

19 123 ("Although a judge must consider the fairness of the settlement

20 to the estate and its creditors, the judge is not required to

21 assess the minutia of each and every claim. The bankruptcy judge

22 does not have to decide the numerous questions of law and fact

23 raised by appellants. The court need only canvass the settlement

24 to determine whether it is within the acceptable range of

25 reasonableness." (citations and quotation marks omitted)).

26         Although the Court should give weight to the reasonable

27 views of all parties in interest during the 9019 process,

28 "objections do not rule. It is well established that compromises

are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).  In fact, courts generally accord great deference to the recommendations of the estate's representative when considering negotiated agreements. *See, e.g., Official Comm. of Unsecured Creditors v. James Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.),* 103 B.R. 420, 423 (S.D.N.Y. 1989).

**B.    The Stipulations Are Reasonable, Fair, And Equitable; They Should Be Approved By The Court.**

The Stipulations are equitable and appropriate.  As such, they should be approved by this Court pursuant to Bankruptcy Rule 9019(a) for a number of reasons.

<u>First</u>, as to FRC, the Stipulations resolve alleged repurchase claims at a significant discount.  With respect to the various claims potentially involved, FRC is paying *only approximately* 5.5% of the claimed amount across the three series of transactions.  There can be no real question that this is a favorable resolution of such repurchase claims against FRC – a resolution well within the required "range of reasonableness." Apart from the reasonableness for FRC, the Stipulations are also very reasonable from the Debtor's perspective: in exchange for releases of claims it may have against FRC or Deutsche Bank relating to their disputes, the Debtor gets the benefit of avoiding the future costs that the disputes could foist on its estate. Facilitating key FRC settlements in this fashion is unquestionably a fair and reasonable exercise of the Debtor's business judgment. Likewise, it is reasonable from the standpoint of the underlying Trusts to settle the repurchase claims at a discount now rather than incur the expense and risk of litigation and the risks that

the (a) reserves proposed to be established by the plans and (b) the assets of the reorganized Debtor prove to be insufficient to fully cover both the alleged claims and other claims against the reorganized Debtor.

Second, the Stipulations disentangle FRC and Deutsche Bank from their involvement in long-pending and fact-intensive disputes, thereby obviating the need for FRC to defend against any litigation Deutsche Bank may commence in the future.  Although FRC and the Debtor believe that FRC's position in any such disputes would ultimately prevail, they also acknowledge the uncertainty inherent in any litigation.  Apart from this indeterminacy about the ultimate result lies the burdens associated with the process of pursuing the litigation with Deutsche Bank to finality.  All parties would accrue very significant legal costs associated with discovery, motion practice, and a trial on Deutsche Bank's purported claims – it is not implausible to think that such costs could quickly run into the millions of dollars.  Moreover, regardless of the outcome on the merits of any trial, it is possible that either FRC or Deutsche Bank would appeal any adverse ruling.  Such appeals might raise difficult and complicated issues of law, necessitating lengthy briefing and further delay.  The Stipulations eliminate the need for those additional costs and uncertainty, making them even more attractive to both FRC and the Debtor and to Deutsche Bank.

Third, instead of delaying the matter at least through the first hearing on plan confirmation, the Stipulations resolve the fights between FRC and Deutsche Bank now, thereby eliminating at least one potential confirmation objection.  In addition, the

Stipulations serve to resolve any further concerns Deutsche Bank

could raise about the form or substance of the various proponents'

Court-approved "FRC creditor notices" and disclosure statements.

By advancing the progress of this chapter 11 case in this manner,

the Stipulations further an interest of utmost federal concern.

*See, e.g.*, *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145

(1st Cir. 1992) (noting "the important policy favoring efficient

bankruptcy administration"); *Century Glove, Inc. v. First Am. Bank*,

860 F.2d 94, 98 (3d Cir. 1988) (emphasizing how "issues central to

the progress of the bankruptcy petition, those likely to affect the

distribution of the debtor's assets, or the relationship among the

creditors, should be resolved quickly" (citation and quotation

marks omitted)).  Indeed, as a result of these agreed resolutions

with Deutsche Bank, FRC and the Debtor's management and

professionals can now devote more time to other pressing matters in

this large and complex bankruptcy case.

Fourth, the Stipulations are the product of arm's length

negotiation between the parties and their counsel, and there can be

no allegation of collusion or other unfair dealings regarding this

process.  Moreover, the economics of the Stipulations have been

reviewed and approved by the Creditors Committee and the Equity

Committee.  Accordingly, the official representatives of the

estate's stakeholders have considered and approved the proposed

resolutions with Deutsche Bank.

In sum, the Stipulations are fair and equitable

resolutions of their subject matter.  The Stipulations provide

myriad benefits to the Debtor's estate and case.  They should be

approved.

**C.    The Proposed Order.**

        The Stipulations contain certain conditions precedent to the effectiveness thereof, including, without limitation, the issuance by the Court of an order in substantially the form attached to the Stipulations as Exhibit A (the "Order"). All of the relief requested in the Order was part of the good faith, arm's length negotiation of the Stipulations previously described, and each of FRC, the Debtor, and Deutsche Bank consider it essential to their ability to proceed with the Stipulations.

        Because Deutsche Bank acts under the governing documents, including with respect to the alleged repurchase claims, not for its own account but in a representative capacity on behalf of the holders of certificates issued by the various Trusts, Deutsche Bank has made it clear that it is unwilling to proceed with the Stipulations in the absence of the relief requested in the Order. Because the Debtor and FRC recognize the limited capacity in which Deutsche Bank is acting in entering into the Stipulations, and because they believe that the Stipulations are in the best interests of the Debtor's estate and their respective creditors for all of the reasons previously stated, the Debtor and FRC endorse the entry of the Order by the Court, including, specifically, the relief that will inure to the benefit of Deutsche Bank. The Debtor and FRC are also, in effect, beneficiaries of such relief, since a finding of fairness, adequate notice, and exoneration will ensure that the Stipulations are not subject to improper collateral attack by a third party that could impact the plan confirmation process or the ability of the reorganized Debtor to effectuate a confirmed plan.

1    The Debtor respectfully submits that, because the

2  requested relief is both inextricably intertwined with the

3  substance of the Stipulations and an express condition precedent to

4  the effectiveness of the Stipulations, the Court has the power to

5  issue the Order under the legal authority cited in Part A. of this

6  Section II.  Moreover, the exoneration of Deutsche Bank for its

7  participation in this case and in the Stipulations will become

8  effective only after the Court will have more fully considered the

9  relationship between FRC and its creditors, i.e., upon the mergers

10  that are proposed to occur upon the effective dates of the five

11  pending plans.

12                         **III. CONCLUSION**

13    For the reasons and based on the authorities set forth

14  above, the Debtor respectfully requests that the Court enter the

15  Order approving the Stipulations.

16

17  DATED:  February 11, 2010        /s/*Whitman L. Holt*
                                     THEODORE B. STOLMAN
18                                   WHITMAN L. HOLT
                                     STUTMAN, TREISTER & GLATT
19                                   PROFESSIONAL CORPORATION

20                                   -and-

21
                                     ROBERT W. JONES
22                                   BRENT R. MCILWAIN
                                     PATTON BOGGS LLP
23
                                     Reorganization Counsel for
24                                   Debtor and Debtor in Possession

25

26

27

28

1

## DECLARATION OF DONALD E. ROYER

2        I, Donald E. Royer, declare as follows:

3        1.    I am over eighteen years of age and I have personal

4   knowledge of each of the facts stated in this declaration.  If

5   called as a witness, I could and would competently testify as to

6   the matters set forth below based upon my personal knowledge.

7        2.    I submit this declaration in support of the *Motion*

8   *for Order Approving Stipulations By and Among Deutsche Bank*

9   *National Trust Company, as Trustee, Fremont Reorganizing*

10  *Corporation, and Fremont General Corporation* (the "9019 Motion"[1])

11  filed by Fremont General Corporation, debtor and debtor in

12  possession in the above-captioned case (the "Debtor").

13       3.    I am an Executive Vice President of and the General

14  Counsel for the Debtor and its non-debtor subsidiary, Fremont

15  Reorganizing Corporation ("FRC").  I have been employed in that

16  capacity since November 2007.  As a result, I am familiar with the

17  Debtor's business and operations, particularly with respect to

18  matters involving litigation pending against the Debtor and matters

19  arising in this chapter 11 bankruptcy case, as well as with

20  litigation against and disputes involving FRC.

21       4.    I am familiar with three related *Agreements for*

22  *Withdrawal and Non-Assertion of Claims* (collectively, the

23  "Stipulations"), each entered into by and among Deutsche Bank

24  National Trust Company, not in its entity capacity but solely as

25  the named trustee of certain trusts (the "Trusts") created pursuant

26

27  [1]  All capitalized terms used but not otherwise defined herein
         shall have the meanings ascribed to them in the 9019 Motion and
28       the accompanying *Memorandum of Points and Authorities*.

18

to certain pooling and servicing agreements and trust agreements associated with the sale and/or securitization of mortgage loans, all as more fully described in the Stipulations ("Deutsche Bank"), non-debtor Fremont Reorganizing Corporation ("FRC"), and the Debtor.  True and correct copy of the executed Stipulations are attached hereto as Exhibit "A," Exhibit "B," and Exhibit "C."

    5.    The Stipulations are intended to resolve certain mortgage-related "repurchase" disputes that have been pending between Deutsche Bank and FRC for some time and that may affect the Debtor's administration of this bankruptcy case.

    6.    Although the repurchase claims resolved by the Stipulations are not claims for which the Debtor is liable, the Debtor made a business decision to facilitate FRC's settlements by releasing certain claims its estate may have against Deutsche Bank or FRC, including any claims that may accrue on account of the inconvenience, delay, or costs possibly incurred by the Debtor's estate as a result of ongoing disputes between Deutsche Bank and FRC, whether as part of the plan process or otherwise.  Because the settlements between Deutsche Bank and FRC result in direct benefits to the Debtor, as discussed below, and indirect benefits to the Debtor as a result of its ownership of 100% of FRC's equity, I believe it is reasonable and appropriate for the Debtor's estate to grant these releases as part of the Stipulations.

    7.    The Stipulations, including the Order attached thereto as Exhibit A, are the product of good faith, arm's length negotiations undertaken by the Debtor, FRC, Deutsche Bank, their respective counsel, and their respective agents over a period of time.  They represent a resolution of the parties' disputes about

what "repurchase" claims, if any, Deutsche Bank has against FRC,
provide guidance for the resolution of any further repurchase
disputes that may arise between the parties, and, by virtue of the
Order, provide certainty that the settlements will not be subject
to collateral attack by third parties.  In my business judgment,
the resolution of these disputes through the Stipulations and entry
of the Order is unquestionably in the best interests of the
Debtor's estate, therefore justifying the mutual release provided
by the Debtor.  Moreover, it is my business judgment that the
Stipulations' terms fall well within the zone of reasonableness.

8.    Although I believe that FRC would prevail in any
litigation with Deutsche Bank about Deutsche Bank's alleged claims,
I also recognize uncertainty about the result.  The Stipulations
resolve that uncertainty.

9.    Due to the very fact-intensive and hotly contested
nature of Deutsche Bank's repurchase claims, my experience as in-
house counsel for numerous corporations, including the Debtor and
FRC, suggests that FRC could incur sizable legal fees and expenses
litigating with Deutsche Bank.  Indeed, even if FRC ultimately
prevails on the merits, such litigation could entail a significant
trial and require analysis of each individual mortgage loan.  The
expenses associated with this process, including through any
subsequent appeal, could be massive and could easily run into the
millions of dollars.  The Stipulations eliminate the need for FRC
to incur such significant legal expenses.

10.    Unlike certain other "repurchase" counterparties,
Deutsche Bank has not been active to date in the Debtor's chapter
11 case, but Deutsche Bank has been actively involved in ongoing

Feb. 10. 2010 6:04PM           No. 3468   P. 2
Case 8:08-bk-13421-ES   Doc 1590   Filed 02/11/10   Entered 02/11/10 15:53:15   Desc
Main Document      Page 25 of 25

1  negotiations with FRC about its claims against that entity.

2  Nevertheless, the Debtor and FRC recently received a letter, a true

3  and correct copy of which is attached hereto as Exhibit "D," in

4  which Deutsche Bank suggested that Deutsche Bank may become more

5  active in the bankruptcy case.  Thus, absent the Stipulations,

6  including entry of the Order, I believe that Deutsche Bank could

7  object to confirmation of the five pending chapter 11 plans and ask

8  that this Court evaluate the merits of its alleged "repurchase"

9  claims against FRC and the adequacy of the associated reserves

10  provided by the plans.  Such litigation could involve significant

11  discovery, motion, and hearing practices, all at the estate's

12  expense.  Accordingly, consummation of the settlements set forth in

13  the Stipulations will eliminate the need for such plan-related

14  litigation with Deutsche Bank, and will therefore save potentially

15  significant legal and other expenses for the Debtor's estate.

16        11.  I cannot contemplate any reason why the Debtor or

17  any of its stakeholders would not want to consummate the

18  settlements memorialized in the Stipulations.  Those settlements

19  are fair ones for FRC and the Debtor, are supported by the official

20  committees, and should merit this Court's approval.

21

22        I declare under penalty of perjury that the foregoing is

23  true and correct to the best of my knowledge and belief.

24

25  Executed on February /0, 2010, at Anaheim, California.

26

27                    DONALD E. ROYER

28