1  JOHN P. SCHAFER (SBN 205638)
   jps@mandersonllp.com
2  MANDERSON, SCHAFER & McKINLAY LLP
   4695 MacArthur Court, Suite 1270
3  Newport Beach, CA  92660
   Tel: (949) 788-1038
4  Fax: (949) 743-8310

5  Attorneys for reorganized debtor Signature Group
   Holdings, Inc. f/k/a Fremont General Corporation
6
   RUTAN & TUCKER, LLP
7  Brendt C. Butler (SBN 211273)
   bbutler@rutan.com
8  611 Anton Boulevard, Fourteenth Floor
   Costa Mesa, California 92626-1931
9  Telephone:     714-641-5100
   Facsimile:     714-546-9035
10
   Attorneys for reorganized debtor Signature Group
11 Holdings, Inc. f/k/a Fremont General Corporation

12            **UNITED STATES BANKRUPTCY COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13                     **SANTA ANA DIVISION**

14 | | |
   |---|---|
15 In re | Case No. 8:08-bk-13421-ES
   | |
16 FREMONT GENERAL CORPORATION, | Chapter 11 Case
   a Nevada corporation, | |
17 | **CONSOLIDATED OBJECTION OF**
          Debtor. | **REORGANIZED DEBTOR SIGNATURE**
18 | **GROUP HOLDINGS, INC. TO (1)**
   | **"MOTION OF WELLS FARGO BANK, N.A.**
19 | **AND WELLS FARGO DELAWARE TRUST**
   | **COMPANY PURSUANT TO SECTIONS 105**
20 Taxpayer ID No. 95-2815260 | **AND 1142 OF THE BANKRUPTCY CODE**
   | **TO IMPLEMENT AND ENFORCE TERMS**
21 | **OF THE CONFIRMED PLAN AND**
   | **CONFIRMATION ORDER"; AND**
22 | **RESPONSE IN SUPPPORT OF (2)**
   | **"MOTION TO REQUIRE TRUSTEE TO**
23 | **DISTRIBUTE REMAINING CASH AND TO**
   | **BRING A DISPUTE BETWEEN**
24 | **SIGNATURE HOLDINGS AND WELLS**
   | **FARGO BANK BEFORE THE COURT"**

25 | **Hearing**

26 | **Date:**       October 7, 2010
   | **Time:**       10:30 a.m.
27 | **Courtroom:**  5A
   | **Judge:**      Hon. Erithe A. Smith
28 | |

Reorganized debtor Signature Group Holdings, Inc. hereby files this consolidated objection

("Fee Objection") to the (1) *Motion of Wells Fargo Bank, N.A. and Wells Fargo Delaware Trust*

*Company Pursuant to Sections 105 and 1142 of the Bankruptcy Code to Implement and Enforce*

*Terms of the Confirmed Plan and Confirmation Order* [Docket No. 2197] ("Wells Motion"), filed by

Wells Fargo Bank, N.A. and Wells Fargo Delaware Trust Company (together, "Wells Fargo" or

"Indenture Trustee") and brief response in support of the (2) *Motion to Require Trustee to Distribute*

*Remaining Cash and to Bring a Dispute Between Signature Holdings and Wells Fargo Bank Before*

*the Court* [Docket No. 2218] ("Gardipee Motion"), filed by Glenn S. Gardipee ("Gardipee").

This Fee Objection is supported by the concurrently filed Declarations of James P. Schratz

("Schratz Declaration") and Donald E. Royer ("Royer Declaration"), and by the Reorganized Debtor's

concurrently filed *Motion for Order Disallowing, in Part, Proof of Claim No. 609 Filed by Wells*

*Fargo Bank, N.A. and Request for Disgorgement of Certain Moneys Paid Over*.  The Fee Objection is

made pursuant to 11 U.S.C. § 502, Federal Rule of Bankruptcy Procedure 3007, and Local

Bankruptcy Rule for the Central District of California 3007-1.[1]

## I.

## SUMMARY OF THE OBJECTION AND RESPONSE

**A.    Summary of Objection to Wells Motion.**

Wells Fargo is the Indenture Trustee for the holders of the Trust Originated Preferred

Securities ("TOPrS"), and Arent Fox LLP ("Arent Fox") is Wells Fargo's counsel in this matter.  By

the Wells Motion, Wells Fargo seeks an order compelling the Reorganized Debtor to pay all fees and

expenses incurred by Wells Fargo and Arent Fox in connection with this chapter 11 case

(collectively, "Indenture Trustee Fees") by enforcement of the provisions of the *Amended Order*

*Confirming "Signature Group Holdings, LLC's Fourth Amended Chapter 11 Plan of Reorganization*

*of Fremont General Corporation, Joined by James McIntyre as Co-Plan Proponent (Dated May 24,*

---

[1]    Unless otherwise indicated, all chapter, section, and rule references are to 11 U.S.C. §§ 101 through 1352
("Bankruptcy Code"), to the Federal Rules of Bankruptcy Procedure, Rules 101 through 9036
("Bankruptcy Rules"), and to the Local Bankruptcy Rules of the United States Bankruptcy Court for the
Central District of California, Rules 1001-1 through 9075-1 ("Local Bankruptcy Rules").

2010)" [Docket No. 2136] ("Confirmation Order").[2]  This Fee Objection is necessary and of critical

importance because Wells Fargo and Arent Fox have together wrongfully and without authority or

prior approval of this Court held back and have refused to release $2,000,000 in cash that was part of

the Reorganized Debtor's $45,000,000 required distribution to the TOPrS holders on the Effective

Date of the *Signature Group Holdings, LLC's Fourth Amended Chapter 11 Plan of Reorganization of*

*Fremont General Corporation, Joined by James McIntyre as Co-Plan Proponent, Dated June 8, 2010*

[Docket No. 2132] ("Signature Plan").[3]  Despite the good faith efforts the Reorganized Debtor has

made to resolve the issues regarding the Indenture Trustee Fees with Wells Fargo and Arent Fox,

unfortunately no resolution of the Reorganized Debtor's objection to the holdback of $2,000,000 in

cash, or the fees sought to be collected by Wells Fargo and Arent Fox has been achieved.

As far as the Reorganized Debtor can piece together from the information it has been

provided, Wells Fargo and Arent Fox have submitted invoices from the Petition Date through July

2010 for services and extraordinary services in the amount of $249,631.13 and $1,209,032.79,

respectively.  Copies of the Wells Fargo and Arent Fox invoices are attached hereto, respectively, as

Exhibit A and Exhibit B.   The Reorganized Debtor has already made a good faith payment to Wells

Fargo and its counsel of $1,235,773.27, with a reservation of rights.  Accordingly, the $2,000,000

wrongfully held back is grossly disproportionate to the amount of Wells Fargo and Arent Fox fees in

dispute.  The amount of fees that the Reorganized Debtor held back from the payment to Wells Fargo

and Arent Fox amounts to an aggregate of $137,308.14, or *less than 7% of the amount Wells Fargo*

*and Arent Fox are now withholding from TOPrS holders.*

The Reorganized Debtor's Fee Objection to the Indenture Trustee Fees is based on a review of

the invoices and the underlying agreements governing compensation of the Indenture Trustee.  The

objection is also based on the undisputed fact that both Wells Fargo and Arent Fox duplicated the

work of the Creditors Committee.  In this case, no one may plausibly assert that the Creditors

---

[2]   Please note that Wells Fargo refers to and attached the old version of the Confirmation Order to the Wells
Motion [Docket No. 2197], which version was superseded by the amended Confirmation Order [Docket
No. 2136].

[3]   All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the
Signature Plan.

Committee and its counsel were not vigilant and active during the case.  In light of the existence of an active Creditors Committee (where its counsel incurred $4,212,732.84 million in approved fees and expenses itself), the combined effect of both Wells Fargo's and Arent Fox's undertakings is that there were no less than three separate law firms and their respective counsel involved and at times reviewing the same activities occurring on matters before the Creditor Committee, including Creditors Committee's counsel, Arent Fox, and counsel to the indenture trustee for the Senior Noteholders.

Although the Fremont bankruptcy case was itself large and complex, as the Court has observed, Arent Fox unabashedly assigned and grossly overstaffed their representation and involvement by assigning seventeen (17) different professionals.  It bears repeating: seventeen different professionals at Arent Fox devoted time and billed the Estate representing nothing more than an indenture trustee.  As a result, the Reorganized Debtor hired a fee expert ("Fee Expert"), that is, James P. Schratz, who has reviewed and analyzed Arent Fox's and Wells Fargo's fee statements and submitted the Schratz Declaration concurrently herewith.  Suffice it to say a very cursory review of the invoices with respect to the time devoted by seventeen (17) different professionals at Arent Fox, to say nothing of the Wells Fargo invoices, has raised issues with the Reorganized Debtor that now requires the Reorganized Debtor to seek the assistance of this Court.  The initial grounds for the Fee Objection are as follows:

First, Wells Fargo, as Indenture Trustee for the TOPrS holders, charged fees of approximately **$249,631.13** at an hourly rate on account of *salaried* bank employees.  The vast majority of the time—charged at rates of $395 to $425 per hour—was not spent on issues related to the tasks of a trustee under the actual indenture (e.g., filing a proof of claim), but instead was incurred in the capacity as a creditors' advocate.  Most notably, the work done in these instances comprised the performance of the duties as a member of the Creditors Committee.  Wells Fargo cannot shoe-horn into the Indenture Trustee Fees those costs and expenses it incurred as a member of the Creditors Committee and in performing other advocacy-related activities.  Accordingly, the Fee Objection is premised on the following three grounds with respect to Wells Fargo's activities:

1.    Wells Fargo's activities were outside the scope of its engagement as Indenture Trustee for the TOPrS holders;

2.    Wells Fargo's fees are both excessive and unreasonable; and

3.    Wells Fargo did not make a substantial contribution to the Debtor's Estate.

Second, Arent Fox charged an additional **$1,151,606.56** in legal fees and expenses.  Arent Fox's fees are both excessive and unreasonable for serving in the capacity as counsel to the Indenture Trustee, for at least the following six reasons:

1.    An astonishing seventeen (17) different attorneys worked the Fremont file at Arent Fox, many of which were assigned to work on the case and were then reassigned or left and then taken off the case with new attorneys being assigned.  In stark contrast and by way of comparison, Stutman, Treister & Glatt, P.C., counsel to the Debtor, only had eleven (11) different attorneys work on the case.  Although it is hard to determine what exactly constitutes too many attorneys with respect to the representation of an Indenture Trustee, to paraphrase Justice Stewart Potter, you know it when you see it.  Here, we see it.  As such, it pales reason to argue that Arent Fox was somehow efficient in fulfilling its responsibilities as counsel to the Indenture Trustee and did not charge excessive and unreasonable fees;

2.    There was considerable overlap in the actual work recorded and performed by those seventeen (17) attorneys both (a) among themselves as well as (b) by the Creditors Committee;

3.    Arent Fox used a billing practices referred to as "vague billing" and "lump billing".  When "lump billing" is used, it is impossible to know with any certainty how much time was spent on a specific task.  Lump billing is not a practice this Court has countenanced or allowed any firm involved in this case to follow;

4.    Arent Fox attorneys participated in an excessive number of inter-office conferences (probably in part as a result of too many attorneys working on the case);

5.    Too many Arent Fox attorneys worked on a single issue, which resulted in duplicative and excessive fees (per project and in total) being charged to the Estate;

6.      Arent Fox also stepped up and took on the issues of the TOPrS current and former holders, all of whom as they came before the Court were represented by their own separate counsel. The Court will likely recall two (2) different law firms also represented these parties; and

7.      Arent Fox's invoices are replete with secretarial/administrative tasks that should not be compensated as professional fees.

Based on these deficiencies and as set forth in detail in the Schratz Declaration, the Reorganized Debtor requests disallowance of, ***at minimum***, the following fees or, in the alternative, appointment of the Hon. Mitchel Goldberg (Ret.) as fee examiner with respect to the Indenture Trustee Fees:

| Category | Fees to be Disallowed |
|---|---|
| Travel Time | $28,930.67 |
| Clerical | $3,670.50 |
| Vague Billing | $224,824.96 |
| Block Billing | $224,824.96 |
| **Total =** | **$674,474.87** |

The Reorganized Debtor believes the other deficiencies mentioned, including duplicative services and services outside the scope of the Indenture Trustee, are properly captured within the discounts for the vague billing and block billing and no more reductions are likely necessary.

**B.**    **Summary of Response to Gardipee Motion.**

The Reorganized Debtor supports much of the relief requested in the Gardipee Motion. Gardipee's requested relief is simple. Gardipee requests that Wells Fargo immediately distribute the $2 million of cash of the TOPrS it is holding as a charging lien based on the Reorganized Debtor's objection to certain of the fees and expenses of Wells Fargo and Arent Fox. The Reorganized Debtor supports this request. Gardipee next requests that Wells Fargo and Arent Fox submit an itemized list of its expenses to the Court. The Reorganized Debtor supports this request, as neither the Wells Fargo nor the Arent Fox invoices were attached to the Wells Motion for the Court's review (although they are appended hereto). Gardipee next requests that the Reorganized Debtor respond to the issues

it has with the invoices, which the Reorganized Debtor is doing by way of this Fee Objection.

Finally, Gardipee requests that the Court rule on each issue in dispute.  The Reorganized Debtor again

supports this request or, in the alternative, appoint the Honorable Judge Mitchel Goldberg (Ret.) as

the fee examiner to examine the invoices and prepare a report to assist the Court in doing so.

## II.

### RELEVANT FACTUAL BACKGROUND

**A.**    **Background Regarding the Indenture Trustee.**

Wells Fargo is successor Indenture Trustee under the *Indenture*, dated as of March 6, 1996

("Indenture"), between the Debtor and The Bank of New York Trust Company, N.A., as successor to

First Interstate Bank of California, as Trustee, pursuant to which the Debtor issued the TOPrS, that is,

the 9% Junior Subordinated Debentures due March 31, 2026 in the aggregate principal amount of

$103,092,784.

Wells Fargo is Institutional Trustee under the Amended and Restated Declaration of Trust of

Fremont General Financing dated as of March 6, 1996 ("Declaration of Trust"), pursuant to which

TOPrS securities were issued.  In addition, pursuant to the Declaration of Trust, Wells Fargo

Delaware Trust Company is Delaware Trustee.

Wells Fargo is Guarantee Trustee under the Preferred Securities Guarantee Agreement dated

as of March 6, 1996 ("Guarantee").

**B.**    **Relevant Provisions of the Signature Plan and Confirmation Order.**

With respect to the Indenture Trustee Fees, the confirmed Signature Plan, which was filed on

June 9, 2010, definition, provides for the treatment, and payment, in relevant part, as follows:

> **"Indenture Trustee Fees"** means the ***reasonable compensation***, fees
> and expenses, disbursements and indemnity claims, including, without
> limitation, attorneys' fees and agents' fees, expenses, costs and
> disbursements, incurred by or owed to the Indenture Trustee ***under the***
> Senior Notes Indenture or ***Junior Notes Indenture*** and related or
> ancillary documents, as applicable, whether prior to or after the Petition
> Date and whether prior to or after consummation of the Plan.

(Signature Plan, § I.A (emphasis added).)

6

1

2

3

4

5

6

7

8

     The Reorganized Debtor shall pay or cause to be paid in full and in Cash as an Administrative Claim, without the need for application to, or approval of, any court, without reduction to the recovery of applicable holders of allowed claims, any and all Indenture Trustee Fees and other amounts that are due to each of the Indenture Trustees and its counsel as of the Effective Date on or before the Effective Date.  The Reorganized Debtor shall also promptly pay or cause to be paid in full any and all fees and expenses that will be incurred in connection with or related to the distributions to be made by the Indenture Trustees under this Plan, implementation of the terms of the Plan or fulfilling its obligations under the Junior Note Indenture or this Plan without further court approval.

(Signature Plan, § II.A..1.(f).)

9

10

     The Confirmation Order, dated June 11, 2010 (which was circulated to Arent Fox for comments and approval), then provides:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     Subject to the Indenture Trustees providing invoices to counsel to Signature, ***which shall be subject only to Signature's review for reasonableness under the applicable Indenture***, the Reorganized Debtor shall pay or cause to be paid in full and in cash as an Administrative Claim, without the need for application to, or approval of, any court, or consent of any other party without reduction to the recovery of applicable holders of allowed claims, any and all Indenture Trustee Fees and other amounts that are due to each of the Indenture Trustees and their respective Professionals as of the Effective Date on or before the Effective Date or within ten (10) days of the Indenture Trustee providing counsel to Signature such invoices if the invoice is not provided prior to the Effective Date.  If Signature disputes any portion of the fees and expenses sought by the Indenture Trustees by means of a written notification of such fee or expense dispute delivered to the Indenture Trustee during such ten (10) day period, the Reorganized Debtor shall pay or cause to be paid that undisputed portion of the requested fees and costs within ten (10) days of receipt of the invoices from the Indenture Trustee and the Indenture Trustee shall have the right to seek a determination by the Court of that disputed portion of the fees and costs as reasonable under the applicable Indenture or assert its Charging Lien to pay such disputed amounts.  In the event of any conflict between this Order and the Signature Plan with respect to those matters covered by this paragraph 14, the terms of this paragraph 14 shall prevail.

(Confirmation Order, ¶ 14 (emphasis added).)

26

27

28

**C.**    **The Invoices of Wells Fargo and Arent Fox.**

Wells Fargo and Arent Fox have submitted invoices to Signature/Reorganized Debtor for fees and expenses in the following amounts:

| Period of Invoice | Arent Fox | Wells Fargo |
|---|---|---|
| Petition Date – April 30, 2010 | $1,131,592.94 | $221,447.85 |
| *Reorganized Debtor's Holdback* | *$113,159.29* | *$22,147.49* |
| May 2010 | $20,013.60 | $6,872.13 |
| June 2010 | $34,221.45 | $14,715.00 |
| July 2010 | $23,204.78 | $6,570.00 |
| **Total Fees and Expense =** | **$1,209,032.77** | **$249,631.98** |

Notably, Wells Fargo and Arent Fox failed to include any of their invoices with the Wells Motion. For convenience of the Court, copies of the Wells Fargo and Arent Fox invoices received to date are attached hereto, respectively, as Exhibit A and Exhibit B.

**D.**    **Reorganized Debtor's Effective Date Distribution to TOPrS Holders and Wells Fargo's and Arent Fox's $2 Million Holdback.**

The Signature Plan was confirmed by the Confirmation Order, which was entered on June 9, 2010.  The Effective Date of the Signature Plan was June 11, 2010.  On the Effective Date, the Reorganized Debtor made the following distributions for purposes of a good faith showing despite its objections to certain of the fees and expenses of Wells Fargo and Arent Fox:

| Recipient Party | Amount Paid on June 11, 2010 by Reorganized Debtor | Amount and Percentage of Fees held back |
|---|---|---|
| Wells Fargo as Indenture Trustee for the TOPrS | $199,327.37 | Reorganized Debtor held back $22,147.48 on the Effective Date from Wells Fargo, which constituted 10% of the amount requested as of the Effective Date. |
| Arent Fox | $1,036,445.90 | Reorganized Debtor held back $115,160.66 on the Effective Date from Arent Fox, which was |

|  |  | 10% of the amount requested as of the Effective Date.[4] |
|---|---|---|
| Wells Fargo as Indenture Trustee for the TOPrS | $45,000,000 | Wells Fargo back $2,000,000 of the Reorganized Debtor's $45,000,000 payment based on the Reorganized Debtor's 10% holdbacks. |

After the Reorganized Debtor made the $45 million Effective Date distribution, Wells Fargo alerted the Reorganized Debtor that Wells Fargo distributed only $43 million to the TOPrS holders and retained and held hostage $2 million as a charging lien pending the resolution of any objections to Indenture Trustee Fees in this case, despite the fact that the Reorganized Debtor has only held back $137,308.14. The Reorganized Debtor vehemently opposed both Wells Fargo's and Arent Fox's actions in orchestrating and withholding $2 million from the Reorganized Debtor's required distribution to the TOPrS holders. To date, Wells Fargo and Arent Fox retain the $2 million and those funds still have not been paid to the TOPrS holders. Wells Fargo's and Arent Fox's actions are without precedent and greatly disproportionate to the Reorganized Debtor's holdback.

## III.

## LEGAL STANDARD

This Fee Objection is made pursuant to Bankruptcy Code section 502, Bankruptcy Rule 3007, and Local Rule 3007-1. Bankruptcy Code section 502 authorizes the Reorganized Debtor, as a party in interest, to object to claims. Upon such objection, this Court, "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition. . . ." 11 U.S.C. § 502(b). Although a proper proof of claim is presumed valid under Bankruptcy Rule 3001(f), once an objection is raised which controverts the presumption, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.[5]

---

[4] On the Effective Date, the Reorganized Debtor advised Wells Fargo and Arent Fox by letter that it was holding back a percentage of the fees and would be reviewing the invoices submitted by Wells Fargo and Arent Fox.

[5] See Ashford v. Consolidated Pioneer Mortgage. (In re Consolidated Pioneer Mortg.), 178 B.R. 222, 226 (9th Cir. Bankr. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996); Spencer v. Pugh (In re Pugh), 157 B.R. 898, 901 (9th Cir. Bankr. 1993) (once an objection "provides evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by a prepnderance of the evidence that the claim deserves to share in the distribution of the debtor's assets"); In re Holm, 931 F.2d 620, 623 (9th Cir. 1991) ("the ultimate burden of persuasion [with respect to the validity of a proof of claim] is always on the claimant").

In addition, there is an inherent right to bring this Fee Objection based on Bankruptcy Code section 1129(a)(4), which provides in pertinent part that a plan must satisfy the following requirement:

> (4) ***Any payment made*** or to be made by the proponent, ***by the debtor***, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or ***is subject to the approval of, the court as reasonable***.

11 U.S.C. § 1129(a)(4) (emphasis added).

In addition, Wells Fargo is not eligible for compensation for providing a substantial contribution since the Indenture Trustee acted to protect the interests of the TOPrS holders rather than the entire estate. See In re Worldwide Direct, Inc., 334 B.R. 112, 121 (Bankr. D. Del. 2005)[6] (quoting In re Flight Transp. Corp. Sec. Litig., 874 F.2d 576, 581 (8th Cir. 1989) for the same proposition)).

## IV.

## ARGUMENT

### A.    Analysis of the Signature Plan and Confirmation Order Provisions.

With respect to the Indenture Trustee Fees, the focus in the Signature Plan and the Confirmation Order is at all times on "reasonableness."

The Signature Plan defines "Indenture Trustee Fees" as follows:

> . . . the ***reasonable*** compensation, fees and expenses . . . ***under the*** . . . ***Junior Notes Indenture*** and related or ancillary documents, as applicable, whether prior to or after the Petition Date and whether prior to or after consummation of the Plan.

(Signature Plan, p. 10, ll. 9-13 (emphasis added).

Section II.A.1.e of the Signature Plan in pertinent part provides that with respect to payment of the Indenture Trustee Fees:

> Subject to the Indenture Trustees providing invoices to Signature, which shall be subject only to Signature's review for ***reasonableness under the applicable Indenture***, the Reorganized Debtor shall pay

---

[6]  The opinion in Worldwide Direct has not been released for publication and is subject to revision or withdrawal until released.  A copy of the opinion is attached hereto as Exhibit C.  The opinion, however, has received positive treatment from other cases, albeit no subsequent cases cite the case for this issue.

> or cause to be paid in full and in cash as an Administrative Claim,
> without the need for application to, or approval of, any court . . . .

Signature Plan, p. 19-20, ll. 18-27, 1-2 (emphasis added).

Section II.A.1.f of the Signature Plan provides that with respect to payment of the Indenture Trustee Fees:

> The Reorganized Debtor shall pay or cause to be paid in full and in
> Cash as an Administrative Claim, without the need for application
> to, or approval of, any court, without reduction to the recovery of
> applicable holders of allowed claims, any and all Indenture Trustee
> Fees and other amounts that are due to each of the Indenture
> Trustees and its counsel as of the Effective Date on or before the
> Effective Date.  The Reorganized Debtor shall also promptly pay or
> cause to be paid in full any and all fees and expenses that will be
> incurred in connection with or related to the distributions to be made
> by the Indenture Trustees under this Plan, implementation of the
> terms of the Plan or fulfilling its obligations under the Junior Note
> Indenture or this Plan without further court approval.

Signature Plan, p. 20, ll. 11-18.[7]

The Confirmation Order, dated June 11, 2010 (which was circulated to Arent Fox for comments and approval), then provides:

> Subject to the Indenture Trustees providing invoices to counsel to
> Signature, **which shall be subject only to Signature's review for
> reasonableness under the applicable Indenture** . . . .

(Confirmation Order, ¶ 14 (emphasis added).)

**B.**     **Certain Services Billed By Wells Fargo are Outside the Scope of Wells Fargo's
Engagement as Indenture Trustee.**

Courts have held that if the law provided that "'creditors who voluntarily perform acts which prove to be beneficial to the estate should or must be allowed compensation, courts of bankruptcy would be confronted in many instances with numerous claims for compensation for 'voluntary' assistance.'" In re F. P. Newport Corp., 137 F. Supp. 58, 62 (D. Cal. 1955), quoting In re Owl Drug Co., 16 F. Supp. 139, 147 (D. Nev. 1936)).

---

[7]  The fees and expenses incurred in connection with the distribution to the TOPrS have been paid and are not part of this objection.

1    Unless the employment is authorized, there can be no provision for payment of fees. See In re

2    Owl Drug Co., 16 F.Supp. 139, 145-46 (D.C. Nev. 1936), aff'd sub nom. Cohn v. Edler, 90 F.2d 823

3    (9th Cir. 1937) (holding that there is no legal authority for making any allowance for services

4    rendered by the bankrupt's attorney in helping attorneys for the trustee resist the petitions to set aside

5    the adjudication).

6    In Newport Corp., a controlling stockholder of a bankrupt company sought fees under a

7    claimed contract, which had been approved by the court, and for extraordinary services performed

8    outside the scope of that contract. 137 F. Supp. at 59. The court refused to allow the stockholder to

9    receive compensation and expenses for extraordinary services provided outside of the scope of the

10    contract. Id. at 61. The court pointed out that "[n]o written order was ever . . . made agreeing to

11    compensate [the shareholder] for any extraordinary services during the contractual period. . . ." Id. at

12    62.

13    Certain of the fees for which Wells Fargo billed the Debtor's estate were for services provided

14    outside of the scope of the Indenture and Wells Fargo's role as Indenture Trustee, including services

15    provided in its capacity as a member of the Creditors Committee. The Indenture provided that the

16    Debtor (now the Reorganized Debtor) would pay to Wells Fargo, in the event the Debtor defaulted on

17    the payments of interest or principal to the TOPrS holders:

18    *for the benefit of the Holders of such Securities*, the whole amount
19    then due and payable on such Securities for principal and interest
     (including any Additional Interest), and, to the extent that payment
20    thereof shall be legally enforceable, interest on any overdue principal
     and on any overdue interest (including any Additional Interest), at
21    the rate borne by the Securities, and, in addition thereto, *such*
22    *further amount as shall be sufficient to cover the costs and*
     *expenses of collection, including the reasonable compensation,*
23    *expenses, disbursements and advances of the Trustee, its agents*
     *and counsel.*

24    This clearly contemplates that the Reorganized Debtor would be responsible for the payment

25    of fees and costs borne by Wells Fargo to cover collection on the TOPrS to the extent required under

26    the Indenture, and only for services under the Indenture. Services provided and work performed by

27    Wells Fargo in its capacity as a member of the Creditors Committee were outside of the scope of the

28    Indenture and should not be borne by the Reorganized Debtor.

1    The inherent conflict of interest Wells Fargo faced by becoming a member of the Creditors

2    Committee—a fiduciary to all unsecured creditors—while at the same time remaining the Indenture

3    Trustee for the TOPrS holders—a fiduciary only to the TOPrS holders—should not be overlooked or

4    minimized in assessing the Indenture Trustee Fees.  Importantly, this is a conflict Wells Fargo never

5    directly addressed before the Court.  This is a conflict that has never been resolved or blessed by the

6    Court.  In short, Wells Fargo, in its capacity as a member of the Creditors Committee, had a fiduciary

7    duty to act not for the TOPrS holders alone, but also for the other constituencies that were represented

8    by the Creditors Committee, including the Senior Note Holders and other General Unsecured

9    Creditors.  This is in direct conflict with Wells Fargo's fiduciary duty as Indenture Trustee to the

10    TOPrS holders, which duty ran to the TOPrS holders alone.  Accordingly, Wells Fargo's activities as

11    a member of the Creditors Committee were in direct conflict with its activities as Indenture Trustee.

12    Wells Fargo is stuck between the Scylla and Charybdis: either way there is a breach of fiduciary

13    duties.  At times during the case there no doubt occurred a conflict of these competing interest, a

14    conflict that no doubt increased the costs to the Estate.  Either way Wells Fargo should not be

15    compensated for any of this activity.

16    **C.    <u>Wells Fargo Did Not Make a Substantial Contribution to the Debtor's Estate.</u>**

17    In light of all the services rendered and fees accrued by Wells Fargo and Arent Fox outside the

18    limited scope of the Indenture, it is helpful to consider how bankruptcy courts have viewed indenture

19    trustee fees in other cases where indenture trustees have sought recovery of fees as an administrative

20    claim.  Courts have held that in order to be paid indenture trustee fees as an administrative claim,

21    such fees must satisfy the substantial contribution requirements under Bankruptcy Code section

22    503(b).  <u>See</u>, <u>e.g.</u>, <u>In re Flight Transportation Corp. Sec. Litig.</u>, 874 F.2d at 581 (holding that the

23    indenture trustee's fulfillment of its obligations under the Trust Indenture Act of 1939, standing alone,

24    does not constitute "substantial contribution" in a chapter 11 proceeding for purposes of recovering

25    fees and expenses under Bankruptcy Code section 503(b) because, among other things, an "indenture

26    trustee may take actions that are of only marginal or incidental benefit to the bankruptcy estate" but of

27    primary benefit to bondholders); <u>In re Envirodyne</u>, 174 B.R. 986 (Bankr. N.D. Ill. 1984) (holding that

28    the indenture trustee was not entitled to compensation under Bankruptcy Code section 503(b) for

13

sitting as an *ex officio* member of official committee of unsecured creditors or for taking action which

primarily benefited bondholders as opposed to estate); In re Gillette Associates, Ltd., 101 B.R. 866

(Bankr. N.D. Ohio 1989) (holding that the indenture trustee did not make substantial contribution

under Bankruptcy Code section 503(b) because the services performed were primarily for benefit of

underlying bondholders, not the estate generally); In re Rockwood Computer Corp., 61 B.R. 961

(Bankr. S.D. Ohio 1986) (holding that services performed by the indenture trustee's legal counsel,

including development of a disclosure statement, primarily benefited its bondholders and was,

therefore, not compensable under Section 503(b)).  Wells Fargo's and its counsel's services during

pendency of the bankruptcy primarily benefited the holders of the TOPrS, and not the Estate.

Accordingly, Wells Fargo did not make a substantial contribution to the estate

**D.**     **Excessive Increases in Attorney Hourly Billing Rates Should Not Be Compensated.**

The court in In re First Software Corp., 79 B.R. 108, 119 (Bankr. D.Mass. 1987) aptly

summarized the issue:

> The hourly rate charged by an attorney is not a measure of his
> competency.  The assumption that the passage of time alone warrants an
> automatic increase in counsel's hourly rate is unacceptable in a
> bankruptcy context.  The notion that on June 30th an attorney is
> reasonably worth a particular hourly rate, and the next day, on July 1,
> the attorney's hourly value increases by 19% is without justification ….

The First Software court determined that the hourly rate associated with each attorney was

reasonable and that no upward or downward adjustment was warranted so that fee increases were not

included in the final award of fees.  The court pointed out that there had been no unreasonable delay

in payment of fees.  Id., at p. 120.

Over the course of the 25-month period reviewed, June 26, 2008 through July 28, 2010, 31

Arent Fox timekeepers billed to this bankruptcy.  Of these 31 timekeepers, three (3) had rate increases

of greater than 10%.  Exhibit 5 to the Schratz Declaration shows the hourly rate increases for these

three individuals.

According to The National Law Journal's 2009 survey of billing rates, law firms increased

their average annual firm-wide billing rate by 2.5 percent over the last year, one of the lowest

increases in recent memory.  "Law firms this year increased rates very modestly, compared to the

standard rate increase of 6 to 8 percent," said James Jones, a consultant with Hildebrandt

International. "There really isn't anything comparable," said Joe Altonji, an analyst in the Chicago

office of Hildebrandt International who advises some local firms. "This may, in fact, be the first time

people haven't increased billing rates since the concept started in the 1960's". This article is attached

as Exhibit 6 to the Schratz Declaration.

Despite the global economic meltdown and the major upheaval in the legal industry, Arent

Fox increased their timekeeper rates above this average firm-wide billing rate. The increased billing

rates are excessive, and as such, unreasonable and the auditor recommends, and the Reorganized

Debtor requests, that all billing rate increases over 10% be adjusted to 10% and the excess of

**$23,898.55** be disallowed.

**E.      Travel Time of Arent Fox.**

Travel time can often be non-productive. As such, many courts have allowed only half the

normal billing rate or half the billed travel time as compensable unless the travel time was somehow

used productively.  See, e.g., Daggett v. Kimmelman (1985 DCNJ) 617 F. Supp. 1269, 1282; Jennette

v. City of New York (1992 DC SDNY) 800 F. Supp. 1165, 1170; McDonald, et al. v. Armontrout, et

al. (1988 8th Cir.) 860 F.2d 1456, 1462-3.

In this case, Arent Fox is seeking full reimbursement for their travel time, specifically the time

for travel of the attorneys from the New York office:

| Date | Biller | Description | Hrs | Rate | Amount |
|------|--------|-------------|-----|------|--------|
| 3/11/10 | Rothleder, JN | Correspond with A. Silfen regarding hearing preparation; Prepare for initial confirmation hearing including multiple emails and telephone conferences with A. Silfen; travel to Santa Ana, CA for initial confirmation hearing; prepare response; prepare joinder; review discovery production. | 13.50 | $535 | $7,222.50 |
| 3/12/10 | Rothleder, JN | Return travel from Santa Ana, CA for initial confirmation hearing. | 8.30 | $535 | $4,440.50 |
| 4/22/10 | Rothleder, JN | Travel to California for confirmation hearing. | 10.00 | $535 | $5,350.00 |
| 4/24/10 | Rothleder, JN | Travel from California after confirmation hearing. | 7.10 | $535 | $3,798.50 |

| 9/15/09 | Silfen, AI | Travel to court regarding disclosure hearing. | 7.50 | $815 | $6,112.50 |
|---------|-----------|-----------------------------------------------|------|------|-----------|
| 9/17/09 | Silfen, AI | Travel from hearing. | 6.00 | $815 | $4,890.00 |
| 3/18/10 | Silfen, AI | Prepare for reinstatement hearing, prepare for vote change hearing, travel, negotiate, conference, continue negotiations; review declarations. | 14.90 | $890 | $13,261.00 |
| 3/20/10 | Silfen, AI | Travel from court hearings. | 6.50 | $890 | $5,785.00 |
| 4/26/10 | Silfen, AI | Travel to court, prepare for confirmation hearings. | 11.20 | $890 | $9,968.00 |
| 4/29/10 | Silfen, AI | Travel back from Court, telephone conference with Wells Fargo, various e-mails with regard to confirmation. | 9.50 | $890 | $8,455.00 |
| | | **Grand Total** | **94.50** | | **$69,283.00** |

Three of these entries (Rothleder's 3/11/10 entry and Silfen's 3/18/10 and 4/29/10 entries) are block billed, as that is described below and in the Schratz Declaraiton.  To try to account for this, the auditor took the average of the six entries that strictly contained travel time (Rothleder's entries of 3/12/10, 4/22/10, and 4/24/10 and Silfen's entries of 9/15/09, 9/17/09, and 3/20/10) and came up with 7.57 hours as the average billed travel time between New York and the Court.  Using 7.57 hours as the travel time for the three block-billed entries, the total fees billed for travel total $57,861.33.  A chart listing the time entries containing time billed for travel is attached as Exhibit 7.

The auditor recommends, and the Reorganized Debtor requests, allowing travel time to be billed at only 50% of the time billed, or **$28,930.67**.

**F.     Wells Fargo's and Arent Fox's Fees are Not Reasonable.**

For at least the reasons set forth in Section I above (Summary of the Objection and Response), Wells Fargo's fees are unreasonable under the Indenture.  Indenture trustee fees generally have been challenged as unreasonable on two grounds: (1) the billing rate is incongruent with the work being performed; and (2) the work performed was duplicative.  See In re Pacific Homes, 20 B.R. 729, 750 (Bankr. C.D. Cal. 1982) (reducing fees where salaried personnel of the indenture trustee billed at attorney or paralegal rates while performing non-legal services); and In re International Power Securities Corp., 119 F. Supp. 31, 36, 37 (D. N.J. 1954) (reduced fees for "extraordinary services"

which were routine in nature (e.g., attending hearings and conferences; multiple readings of documents within an organization)).

In determining reasonableness of fees, the court in the Worldwide Direct case declined to rely solely on the percentage of the recovery to be paid, and used the lodestar approach of multiplying a reasonable hourly rate by a reasonable number of hours spent.  Worldwide Direct, 334 B.R. at 130. The court in Worldwide Direct held the indenture trustee's hourly rates were reasonable where no evidence rebutted the assertion that the rates "are comparable to those charged by other indenture trustees in similar circumstances."  Id. at 131.

The Fee Expert's report reflects that similar billing practices to those employed by the indenture trustee in the cited cases above were employed by Wells Fargo and Arent Fox, specifically with respect to clerical work.  (Schratz Decl., ¶ 20.)  Clerical work is generally not recoverable because it is considered overhead.  Nor is clerical work recoverable because an attorney or paralegal actually does the work.  If the services performed by a paraprofessional consist of typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying or mailing documents, organizing files, making copies, delivering or mailing papers, or making or receiving routine telephone calls, the task is clerical in nature and not compensable.  (Id.) Instead, it is taken into account when the law firm sets its attorneys' hourly rates, as they can and should be performed by competent legal secretaries or clerical assistants without additional charge to the client.

| Date | Biller | Description | Hrs | Rate | Amount |
|------|--------|-------------|-----|------|--------|
| 1/12/10 | Constantino, NA | Efile pro hac application of J. Rothleder, prepare proof of service, lodge proposed order and serve on Chambers | 1.10 | $265 | $291.50 |
| 1/19/10 | Constantino, NA | Schedule telephonic appearance for J. Rothleder for 01/22/09 hearing | 0.20 | $265 | $53.00 |
| 4/28/10 | Constantino, NA | Schedule courtcall appearance for 04/30 hearing for R. Arnold | 0.20 | $265 | $53.00 |
| 1/19/10 | Filip, SG | Prepare, file and serve pro hac vice order with proof of service and notice of entered order for Jeffrey N. Rothleder's application to appear. | 1.00 | $205 | $205.00 |
| 2/25/10 | Filip, SG | Prepare Proof of Services, file by ECF and serve the Stipulation to Extend Confirmation Objection Deadlines and the Order Approving Stipulation. | 4.00 | $205 | $820.00 |

17

| Date | Name | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 3/2/10 | Filip, SG | Prepare for filing the exhibits for the omnibus objections and response to proposed competing plans of reorganization and reservation of rights. | 0.60 | $205 | $123.00 |
| 3/2/10 | Filip, SG | Prepare proof of service, serve and file initial omnibus objections and response to proposed competing plans of reorganization and reservation of rights. | 0.40 | $205 | $82.00 |
| 3/3/10 | Filip, SG | Prepare proof of service, serve and file omnibus response to proposed modifications to competing plan of reorganization. | 0.80 | $205 | $164.00 |
| 3/8/10 | Filip, SG | Prepare proof of service, file and serve clean copies of exhibit "C" and "B" to omnibus objection and response of Wells Fargo to proposed plan of reorganization. | 0.20 | $205 | $41.00 |
| 3/8/10 | Filip, SG | Prepare proof of service, serve and file first response to proposed competing pan of reorganization. | 0.20 | $205 | $41.00 |
| 3/10/10 | Filip, SG | Prepare proof of service, file and serve statement concerning discovery and confirmation trial procedures. | 0.20 | $205 | $41.00 |
| 3/17/10 | Filip, SG | Prepare for electronic filing the summary statement and related objection to confirmation of New World Acquisition and Equity Committee plan of reorganization. | 0.30 | $205 | $61.50 |
| 3/17/10 | Filip, SG | Prepare proof of service and file the summary statement and related objection to confirmation of New World Acquisition and Equity Committee plan of reorganization. | 0.20 | $205 | $41.00 |
| 3/23/10 | Filip, SG | Prepare proof of service, file and serve Ronni Arnold's pro hac vice application. | 0.60 | $205 | $123.00 |
| 3/24/10 | Filip, SG | Prepare letter to Judge's clerk re payment of pro hac vice fee for Ronni Arnold. | 0.20 | $205 | $41.00 |
| 3/24/10 | Filip, SG | Prepare proof of service, file and serve the order on Ronni Arnold's pro hac vice application. | 0.80 | $205 | $164.00 |
| 4/16/10 | Filip, SG | Prepare proof of service, serve and filed the opposition to New World Acquisition's motion for reconsideration of reinstatement ruling. | 1.20 | $205 | $246.00 |
| 4/21/10 | Filip, SG | Prepare proof of service and serve the reply to New World's supplemental memorandum of points and authorities in support of confirmation of New World plan. | 1.00 | $205 | $205.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7/18/08 | Indelicato, LA | Prepare envelopes to send to court for clerk to use for service of signed orders granting pro hac applications; review local rules and procedures; call to court re same. | 0.30 | $270 | $81.00 |
| 11/9/09 | Indelicato, LA | Review docket; arrange Jeff Rothleder's telephonic appearance at hearing on disclosure statement; email Rothleder re same. | 0.30 | $285 | $85.50 |
| 11/16/09 | Indelicato, LA | Set up court call for tomorrow's emergency hearing for Jeff Rothleder. | 0.30 | $285 | $85.50 |
| 3/22/10 | Indelicato, LA | Arrange for copying of CD of Fremont documents for Andrew Silfen. | 0.20 | $270 | $54.00 |
| 9/14/09 | Linn, SL | Assemble duplicate set of exhibits; | 0.60 | $250 | $150.00 |
| 7/9/10 | Kong, AS | Discuss with A. Ordubegian re payment of fees and setting of hearing re same. | 0.10 | $465 | $46.50 |
| 7/9/10 | Kong, AS | Discuss with J. Rothleder re setting of motion for fees and telephone with law clerk re setting of motion for fees. | 0.40 | $465 | $186.00 |
| 7/12/10 | Kong, AS | Telephone to chambers to discuss hearing date for motion to enforce plan terms for fees and expenses. | 0.30 | $310 | $93.00 |
| 7/27/10 | Kong, AS | Revise motion to enforce plan terms and prepare same with exhibits and proposed order for filing. | 0.20 | $465 | $93.00 |
| | | **Grand Total** | **15.90** | | **$3,670.50** |

A table listing examples of clerical tasks billed by Arent Fox timekeepers is attached as Exhibit 8 to the Schratz Declaration. The last four (4) entries above, by attorney Andy S. Kong, are his only entries to this entire matter. Attorney Kong is a 2006 admittee to the California Bar. The first three entries relate to setting a hearing date for the motion for fees, a task that could and should have been handled by a secretary. The final entry appears to be substantive in that it references revising the motion. However, it also refers to preparing the motion for filing. As this entry is attorney Kong's only work on the motion and totals just 0.2 hours, it is highly unlikely that he made any substantive or substantial changes to the motion and more likely just prepared the motion for filing. That is why Mr. Schartz has classified this task as clerical. Total fees associated with clerical work are at minimum **$3,670.50**. None of this work required specialized legal expertise or knowledge and should have been performed by clerical personnel at no additional cost to the estate.

## G.    __Vague Billing.__

Wells Fargo and Arent Fox bear the burden of describing the services performed in sufficient detail to enable the Court to make a meaningful assessment as to whether those services were reasonable.  Vague entries provide little or no information about the nature or significance of the work performed, thereby severely hampering a realistic assessment of its utility, or the reasonableness of the associated fees.  Specifically, billing records should provide: "…sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." United Slate, Tile & Composition v. G&M Roofing, 732 F.2d 495, 502 n.2 (6th Cir. 1984).  Generally, "sufficient detail" means that the timekeeper must include in each time entry, at a minimum, descriptions of the services performed and the subject matter involved.  To enable the court to determine whether the services are compensable, the timekeeper is also expected to identify the other party to the conference, meeting, telephone call, or correspondence.  Where the time entry omits some critical element describing the services performed, it is not compensable.  See In Re Bennett Funding Group, 213 BR. 234, 244 (Bankr. N.D.N.Y. 1997).

Vague characterizations of the services performed, omitting the other party to a conference, meeting, telephone call, or correspondence or omitting the subject of a communication make review meaningless.  Time entries containing such vague characterizations connote some activity other than professional services, although it is not entirely clear what the timekeeper is actually doing.  They fail to identify a specific task that the timekeeper is performing.  Consequently, it is not possible to determine whether the task is necessary and whether the compensation sought is reasonable.

As examples, the following billing entries all lack at least one piece of information essential to an informed analysis such as the subject of a communication, the other parties to a communication, what "attention to" means, or what documents were reviewed:

| Date | Biller | Description | Hrs | Rate | Amount |
|------|--------|-------------|-----|------|--------|
| 3/4/10 | Arnold, RN | Attention to issues regarding discovery of New World and Equity Committee | 1.60 | $475 | $760.00 |
| 3/22/10 | Arnold, RN | Attention to issues regarding pro hac admission for April 2 hearing | 0.30 | $475 | $142.50 |

| 4/5/10 | Brown, TF | Prepare draft email to New World counsel. | 0.40 | $690 | $276.00 |
| 7/20/09 | Eisenberg, LM | Emails with A. Silfen and J. Rothleder. | 0.20 | $615 | $123.00 |
| 9/16/08 | Indelicato, LA | Various calls and emails to set up telephonic hearing. | 0.40 | $285 | $114.00 |
| 11/4/08 | Indelicato, LA | Review and organize documents. | 0.20 | $285 | $57.00 |
| 2/7/10 | Ordubegian, AO | Review various plan related pleadings recently filed by parties. | 1.40 | $655 | $917.00 |
| 2/12/10 | Ordubegian, AO | Review various pleadings and emails re repurchase creditors and impacts on pending plans. | 0.70 | $655 | $458.50 |
| 2/24/10 | Ordubegian, AO | Various conferences and email exchanges re Wells Fargo's objection to plan confirmation. | 1.70 | $655 | $1,113.50 |

Even examining the context of these billing entries fails to provide sufficient information as to what is being done in each of these vague billing entries.

Attorney Andrew I. Silfen billed 442.90 hours, or 23.8% of the total 1,863.40 hours billed by all Arent Fox timekeepers.  His hours resulted in fees totaling $378,979.50, or 34.1% of the total $1,110,873.00 billed by all Arent Fox timekeepers. Reviewing all of his 285 billing entries, the auditor found that most of them were vague as seen by the following examples:

| Date | Biller | Description | Hrs | Rate | Amount |
| --- | --- | --- | --- | --- | --- |
| 6/26/08 | Silfen, AI | Conference; negotiation; telephone conference. | 0.30 | $760 | $228.00 |
| 6/29/08 | Silfen, AI | Review documents, telephone call with client. | 0.40 | $760 | $304.00 |
| 6/30/08 | Silfen, AI | Conference with UST. | 0.40 | $725 | $290.00 |
| 6/30/08 | Silfen, AI | Various telephone calls and negotiations. | 0.80 | $725 | $580.00 |
| 6/30/08 | Silfen, AI | Conference with Wells and M. Cryan. | 0.30 | $725 | $217.50 |
| 7/1/08 | Silfen, AI | Various telephone calls, conference, review documents. | 2.10 | $760 | $1,596.00 |
| 7/3/08 | Silfen, AI | Review documents and make comments. | 0.60 | $725 | $435.00 |
| 7/3/08 | Silfen, AI | Telephone call with committee counsel. | 0.50 | $725 | $362.50 |
| 7/7/08 | Silfen, AI | Review documents and pleadings. | | | $435.00 |

| | | | 0.60 | $725 | |
|---|---|---|---|---|---|
| 7/8/08 | Silfen, AI | Various telephone calls, conference. | 1.20 | $725 | $870.00 |

In In re Samuel R. Pierce, Jr., 190 F.3d 586, 593-594 (D.C. Cir. 1999), the D.C. Circuit confirmed that its general practice was to reduce vaguely entered hours of plaintiffs' attorneys by ten percent (10%). Similarly, the Eighth Circuit, in H.J.Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991), upheld a district court's reduction of hours billed by the prevailing plaintiff's attorney by twenty percent (20%) for vague billing entries. Finally, in Gratz v. Bollinger, 353F.Supp.2d 929, 939 (E.D. Mich. 2005), District Judge Duggan reduced requested fees ten percent (10%) due to block billing and vague entries.

As set forth in the Schratz Declaration, the auditor found 282 total entries that were vague. A table containing these entries is attached to the Schratz Declaration as Exhibit 9. These entries total 343.8 hours and $269,576.50 in fees, or 18.5% of the total hours and 24.3% of the total fees. In light of the magnitude of this billing problem, the auditor recommends, and the Reorganized Debtor requests, a 20% reduction of the fees remaining after the above-discussed disallowances have been taken. Taking the reduction in this way avoids double-deducting.

**H.    Block Billing.**

"Block billing" is the lumping together of daily time entries consisting of two or more task descriptions, or the grouping of different tasks within one block of time on a time record. Block billing obscures the amount of time actually spent on each task, and opens the door to understatement or overstatement of the amount of time the law firm actually spent on specific tasks.

Federal courts, and particularly bankruptcy courts, have long disapproved of block billing and disallowed fees where this practice exists. For example, the Tenth Circuit has ruled: "[t]he use of billing practices that camouflage the work a lawyer does naturally and quite correctly raises suspicions about whether all the work claimed was actually accomplished or whether it was necessary…" Robinson, et al. v. City of Redmond, et al., 160 F.3d 1275 (10th Cir. 1998); see also Leroy v. City of Houston, 906 F.2d 1068 (5th Cir, 1990) (plaintiff has burden to show amount of time expended was reasonable, and this showing could not be made without some breakdown as to the separate functions performed and number of hours devoted to each.) The Ninth Circuit held (in an

unpublished opinion) that block billing and "overly generalized descriptions of tasks performed"

requires a reduction in a fee award.  Gracie, et al. v. Semaphore Entertainment Group, et al., 52 Fed

Apex. 43; 2002 U.S. App. LEXIS 24556 (9th Cir. 2002).

State Bar of California Mandatory Fee Arbitration Advisory No. 03-01, Detecting Attorney

Bill Padding, January 29, 2003, at page 5, attached as Exhibit 10 to the Schratz Declaration, likewise

disapproves block billing, stating in pertinent part:

> If one amount of time is shown for working on more than one discreet
> task, this is called "block billing" or "lumping" time.  This is almost
> never allowed by federal courts.  The practice hides accountability and
> may increase time by 10% to 30%.  The larger the "block," the more
> care should be exercised.

In a December 2005 U.S. District Court decision in the Northern District of California, North

Pacifica LLC v. City of Pacifica, et al., Case No. C01-4823 EMC, Magistrate Judge Chen cited Mr.

Schratz's report and confirmed his disapproval of block billing in his opinion on the motion for

attorneys' fees.  In doing so, Magistrate Chen referred to a California State Bar fee arbitration

committee advisory report, Detecting Attorney Bill Padding, January 29, 2003, No. 03-01, which was

included in Mr. Schratz's report for the above-referenced case and is attached to the Schratz

Declaration as Exhibit 6.  The report concludes that block billing "hides accountability and may

increase time by 10 to 30 percent.  The larger the 'block,' the more care should be exercised," at page

5.  Magistrate Chen also disapproved of block billing in Defenbaugh v. JBC & Associates, Inc., No.

C-03-0651 JCS, 2004 WL 1874978 at *9 (N.D. Cal., August 10, 2004), and Navarro v. General

Nutrition Corp., Northern District Case No. C-03-0603.   The report does not distinguish or even

mention the difference between fee shifting claims with unrelated non-fee shifting claims.

The California State Bar advisory report referenced above was also used to reduce hours

billed in block format in Welch v. Metropolitan Life Insurance Co., No. 04-56768, D.C. No. CV-04-

00084-PA (9th Cir. 2007).  While disapproving the District Court's across-the-board reduction of

hours by 20 percent (because only about half the entries were blocked), the Ninth Circuit Court

acknowledged the lower court's right to "impose a reduction for block billing," at p. 7.  The Welch

Court further states, in pertinent part, at p. 6.:

23

1
2
3
4
5
6
7
8
9
10
11

We do not quarrel with the district court's authority to reduce hours that are billed in block format. The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. See Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992). It was reasonable for the district court to conclude that Welch failed to carry her burden, because block billing makes it more difficult to determine how much time was spent on particular activities. See, e.g., Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness"); see also Hensley v. Eckerhart, 461 U.S. [424,] at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing); see also Costanza Builders of N.J., Inc. v. Waterfront Homes, LLC, 2005 N.J. Super. Unpub. LEXIS 344 (App.Div. Oct. 28, 2005); and Downey v. Coalition Against Rape & Abuse, Inc., 2005 U.S. Dist. LEXIS 22986 (D.N.J. Sept. 30, 2005).

12
13
14
15
16

        Timekeepers who block bill usually use either a semicolon (";") punctuation mark or a period (".") punctuation mark to separate discrete tasks contained within one billing entry. Since block entries tend to consist of strings of items connected with semicolons or periods, finding and counting the semicolons or periods can also identify block entries and their length and is usually done by conducting a word search through the billing records for these punctuation marks.

17
18
19
20
21

        This approach is not exact, as the search may pick up semicolons and periods in normal use, thus overstating the likely count of block entries. On the other hand, some block entries do not contain semicolons, thus underestimating the count. On balance, the auditor believes that the opposite risks tend to neutralize each other. The semicolon or period count is a valuable indicator of prevalence and complexity of block entries in billing records.

22
23
24
25
26

        Ideally, block-billed entries should play no role in billing records, and each activity should be separately stated and charged. To the extent there are any block entries, therefore, the records fail to clearly present how much time was spent on each task. Block billing introduces serious potential for error, and undermines the integrity of the billing data as a whole. Examples of blocked entries are set out below:

27
28

| Date | Biller | Description | Hrs | Rate | Amount |
|------|--------|-------------|-----|------|--------|

| | Date | Name | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| | 3/16/10 | Arnold, RN | Draft and revise reinstatement brief, including telephone conferences with J. Rothleder and legal research regarding same; prepare response to issues raised by other parties. | 5.10 | $475 | $2,422.50 |
| | 4/5/10 | Brown, TF | Review outstanding discovery requests from New World and Equity Committee and information received from client in response to same; review production; conference regarding discovery. | 3.20 | $690 | $2,208.00 |
| | 9/17/08 | Henderson, DJ | Prepare memo regarding Trust Termination; conferences with A. Silfen and D. Dubrow; telephone conference with P. McLeod; conference with holders; respond to holders. | 4.50 | $685 | $3,082.50 |
| | 9/1/09 | Rothleder, JN | Review and revise notices to holders regarding plan filings and forward same to J. Lewis for review and execution; analyze Equity Committee plan of reorganization and related disclosure statement and draft and revise objection to same; review Committee's response to Equity Committee disclosure statement and correspond with A. Silfen re same. | 6.10 | $515 | $3,141.50 |
| | 9/2/09 | Rothleder, JN | Revise objection to Equity Committee Disclosure Statement and forward same to A. Silfen for review and telephone conference with A. Silfen re same; correspond and telephone conferences with J. Lewis regarding notices to holders on filing of competing plans and revise same; draft statement in support of Committee disclosure statement. | 3.80 | $515 | $1,957.00 |
| | 10/22/09 | Rothleder, JN | Prepare for and participate in committee conference call regarding New World plan; review draft language regarding treatment and payment of indenture trustee fees for inclusion in equity committee plan and correspond with A. Silfen and J. Lewis re same; review memorandum from Committee on New World plan. | 3.40 | $515 | $1,751.00 |
| | 2/17/10 | Rothleder, JN | Analyze proposed plans of reorganization for relevant provisions including treatment of senior creditors and SEC compliance in advance of drafting objections to confirmation; legal | 7.10 | $535 | $3,798.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | research regarding modification of indentures by plans and correspond with R. Arnold re same; correspond and telephone conferences with R. Arnold regarding draft confirmation objections and related issues; conference call with A. Silfen and R. Arnold regarding strategy relating to confirmation; review correspondence to Committee counsel regarding Committee's plan comments and related authorization. | | | |
| | 2/22/10 | Rothleder, JN | Correspond with A. Ordubegian regarding Fremont hearing dates; analyze plans and disclosure statements in connection with objection to confirmation and legal research re same; correspond with R. Arnold regarding confirmation objections; review draft objection and telephone conference with A. Silfen and R. Arnold re same. | 5.40 | $535 | $2,889.00 |
| | 3/2/10 | Rothleder, JN | Revise, finalize and file confirmation objection; multiple e-mails and conferences with A. Silfen, R. Arnold and A. Ordubegian regarding confirmation objection; correspond and telephone conference with J. Lewis regarding comments and approval of confirmation objection; conferences with J. Jordan regarding securities law inserts for objection; review draft discovery prepared by G. Utlik and comment on same. | 12.10 | $535 | $6,473.50 |
| | 4/13/10 | Rothleder, JN | Review and analyze pleadings filed on April 9th including New World's motion to reconsider reinstatement ruling; conferences with R. Arnold regarding status of pleadings and responses; conference with T. Brown regarding opposition to New World's motion to reconsider; conference call with A. Silfen, T. Brown, R. Arnold and G. Utlik regarding opposition to motion to reconsider and response to New World supplement brief in support of confirmation; telephone call with holder regarding opposition to motion to reconsider; mark-up Equity Committee | 5.90 | $535 | $3,156.50 |

| | | | | | |
|---|---|---|---|---|---|
| | | and Signature plan and conference with A. Silfen re same; forward plan supplements for review by D. Henderson and J. Jordan. | | | |
| 4/21/10 | Rothleder, JN | Review and comment on draft reply to New World's supplemental confirmation brief and correspondence with R. Arnold re same; prepare for hearing on motion for reconsideration of reinstatement ruling and conferences with A. Silfen and T. Brown re same; mark-up revised and amended documents. | 6.30 | $535 | $3,370.50 |
| 4/23/10 | Rothleder, JN | Prepare for hearing on, among other things, New World's motion for reconsideration of reinstatement ruling; participate and attending confirmation hearings and correspond with A. Silfen re same; confer with Signature and OEC regarding comments to proposed plans; review hearing notes and draft summary of same for A. Silfen; travel to airport for return flight from California | 10.10 | $535 | $5,403.50 |

There are 1,259 separate billing entries in Arent Fox's billing statement. Using the semicolon count the auditor found that 958 entries, containing 53.80% of the hours billed and 56.46% of the fees billed contained no semicolons, most likely indicating that these billing entries contained only a single discrete task.  This also means that 301 billing entries, containing 46.20% of the hours billed and 43.54% of the fees billed, contained more than one task; in other words, were block-billed.  A table itemizing the number of entries containing semicolons, and the number of semicolons in those entries, is attached as Exhibit 11 to the Schratz Declaration.  A table containing these entries is attached as Exhibit 12 to the Schratz Declaration.

To the degree block billing was present in this case, in addition to the fact that it can overstate or inflate time spent by as much as 30 percent, it presented additional problems. For example, it was difficult, if not impossible, to allocate work with a high degree of precision that was associated with specific documents.

Based upon the fact that over 40% of the billing hours and fees were contained in block-billed entries, and relying upon the State Bar of California Mandatory Fee Arbitration Advisory No. 03-01,

1  as quoted above, the auditor recommends a 20% further disallowance of the fees remaining after the

2  above-discussed disallowances have been taken.

3  **I.**      **Reservation of the Reorganized Debtor's Rights.**

4          Nothing in this Motion constitutes a waiver of the Reorganized Debtor's rights in any respect.

5  The Reorganized Debtor also reserves any and all rights to assert additional objections to Claim

6  No. 609, including supplementing this objection once the Reorganized Debtor receives the Fee

7  Expert's report.

8                                                    **IV.**

9                                              **CONCLUSION**

10         For the foregoing reasons, the Reorganized Debtor respectfully requests that the Court deny

11 the Wells Motion, grant the Gardipee Motion, and order the disallowance of certain Indenture Trustee

12 Fees as requested herein or, in the alternative, appoint the Hon. Mitchel Goldberg (Ret.) as the fee

13 examiner with respect to the Wells Fargo and Arent Fox fees and expenses.

14
   Dated: September 23, 2010                          RESPECTFULLY SUBMITTED,
15

16
                                                      By: */s/ John P. Schafer*
17                                                    John P. Schafer, an Attorney with MANDERSON,
                                                      SCHAFER & MCKINLAY, LLP
18
                                                      Attorneys for reorganized debtor Signature
19                                                    Group Holdings, Inc. f/k/a Fremont General
                                                      Corporation
20

21

22 Dated: September 23, 2010
                                                      By: */s/ Brent C. Butler*
23                                                    Brendt C. Butler, an Attorney with RUTAN &
                                                      TUCKER LLP
24
                                                      Attorneys for reorganized debtor Signature Group
25                                                    Holdings, Inc. f/k/a Fremont General Corporation

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re:<br><br>FREMONT GENERAL CORPORATION,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER:    8:08-bk-13421-ES |
|---|---|

**NOTE:**  When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**4695 MacArthur Court, Suite 1270, Newport Beach, CA  92660**

The foregoing document described [_____] will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**:  Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On __**September**__, 2010__ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- 

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On __**September**___, 2010__ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

- **Presiding Judge:**  Honorable Erithe A. Smith, U.S. Bankruptcy Court, Central District of CA, 411 West Fourth Street, Suite 5041, Santa Ana, CA  92701
  [VIA EXPRESS MAIL]
- 

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

- 

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | John P. Schafer | /s/ John P. Schafer |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                        **F 9013-3.1**